THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL GAUER, Defendant-Appellant.

(Nos. 71-330, 71-331 cons.;

Second District—September 29, 1972.

John T. Perry, of Wheaton, for appellant.

William R. Ketcham, State's Attorney, of Geneva, (W. Ben Morgan, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The only question presented here is whether the State laid a proper foundation for the admissibility, as records in the ordinary course of business, of telephone company records on "IBM Trouble Recorder Cards" of telephone calls from defendant's telephone to those of the complaining witnesses. Defendant, who with his wife, was an employee of Illinois Bell Telephone Company ("Illinois Bell") was convicted in a bench trial of disorderly conduct in violation of section 26—1 (a) (2) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, sec. 26—1 (a) (2) ), and fined $100. He was charged with disorderly conduct on July 17, 1970, during the course of a strike against Illinois Bell, for making telephone calls to two female employees. Defendant and his wife were observing the strike, whereas the complaining witnesses continued working.

When the calls reached each of the complaining witnesses, no words were spoken by the caller except on one occasion. At that time the witness was unable to identify the voice as that of the defendant, but she was certain it was that of a male.

After several such calls on July 14th and 15th, the complaining witnesses requested that a "trap" or electronic tracer device be placed on their telephone lines. This was done.

One of the complaining witnesses testified that she was an annoyance call specialist and had personal knowledge of what a tracer is, and a general idea of how the tracer works: a trouble recorder is put on the line

of the receiving party and "every time a call is ringing on your line a card will click * * *. It gives the location of the calling phone and the time, date and location to the receiving phone."

The State then called a witness who testified that his occupation was keeper of the records for Illinois Bell and that as such he had direct supervision and control of all the records. The records he brought with him pursuant to subpoena were 2 sets of punched "IBM Trouble Recorder Cards", which were business records of Illinois Bell, made in the ordinary course of business at or about the times and dates reflected thereon. He testified that "* * * our records are reliable, and we place a lot of faith in our records * * *." Upon that testimony the records were received in evidence, over defendant's objection.

He then testified to what the records reflected, namely, specific completed telephone calls made at various times and dates, including July 17, 1970, from defendant's telephone to those of complaining witnesses.

In the light of the general use of electronic computing and recording equipment in the business world and the reliance of the business world on them, the scientific reliability of such machines can scarcely be questioned. (*Jones on Evidence*, 5th ed. sec. 609.) In *People v. Wells*, 80 Ill. App.2d 187, 193-194, testimony and records pertaining to a telephone call tracing device were received in evidence after the witness testified that he was familiar with the equipment and went with the technician as he checked through each stage of the tracing operation, and when it was checked back to the calling telephone. The court there held that the testimony describing the tracing operation was sufficient to show the "circumstantial probability of trustworthiness."

Likewise, in *King v. State ex rel. Murdock Acceptance Corp.* (Miss.), 222 So.2d 393, and *Transport Indemnity v. Seib* (Neb.), 132 N.W.2d 871, cited by defendant, electronic computer print-out sheets were held to be admissible as records in the ordinary course of business. However, both courts pointed out that the method of their preparation was fully testified to and a complete and comprehensive explanation of its meaning was given. In *King*, the opinion stresses that the court must be satisfied from the foundation testimony that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission. We agree.

In the case at bar there was no such testimony on which the admissibility of these records could be predicated. We hold, therefore, that it is necessary to reverse and remand this case for a new trial where competent testimony may be given to justify admission of the records. If an adequate foundation is laid, testimony could be received of earlier telephone calls as evidence of intention or design of the de-

fendant to annoy the complaining witnesses. See *People v. Wells, supra,* at 191-192.

For the reasons stated, the judgment of conviction is reversed, and the case is remanded for a new trial.

Reversed and remanded.

SEIDENFELD, P. J., and GUILD, J., concur.