MONARCH FEDERAL SAVINGS AND LOAN ASSOCIATION, A FEDERAL ASSOCIATION DULY CHARTERED BY THE FEDERAL HOME LOAN BANK BOARD, PLAINTIFF, v. LENA GENSER, WIDOW AND SIDNEY GENSER, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided December 19, 1977.

108

110

Mr. *Robert J. Reilly, III,* for plaintiff (*Mr. Robert F. Colquhoun,* attorney).

Mr. *Seymour Margulies* for defendants (*Messrs. Brigadier & Margulies,* attorneys).

KENTZ, J. S. C. During the trial of the issues in this mortgage foreclosure action, plaintiff Monarch Federal Savings and Loan Association (Monarch) requested that certain computer records be admitted into evidence under the business records exception to the hearsay rule, *Evid. R.* 63(13). Defendants Lena Genser and Sidney Genser[1] (Gensers) objected to their admission on the ground that plaintiff failed to lay the necessary foundation. Plaintiff produced three

---

[1]Lena Genser was the sole mortgagor. She and Sidney Genser were the obligors on the bond given to accompany the subject mortgage.

foundation witnesses and their testimony may be summarized as follows.

The first witness, Richard De Russo, assistant vice-president of the Wood-Ridge National Bank (Wood-Ridge), testified that Monarch maintains a lock-box deposit account with Wood-Ridge for processing of their mortgage accounts. The mortgagors forward their payment together with an IBM card to the bank. After the monies are received, processed and checked, the computer cards are forwarded to Financial Services, Inc. (Financial Services) and the checks are forwarded to Monarch. Any problems or questions with the account are handled by Monarch. This witness also indicated that the account was maintained in the regular course of the bank's business and that Wood-Ridge provides similar services for other banks.

The next witness, Otto Kieffer, is the office manager of the mortgage department of Financial Services, a computer corporation located in Glen Rock, New Jersey. He testified that Financial Services, pursuant to an agreement with Monarch, has computerized the mortgage accounts of Monarch. When an account is initially opened, Monarch forwards all the relevant information to Financial Services which is transferred into the computer. Thereafter, all transactions between Monarch and the mortgagor are processed through the individual account. Monarch receives a daily read-out for each transaction and a monthly read-out for each individual account. Every mortgagor receives monthly and yearly statements.

The records of the Gensers' account were marked for identification and identified by Kieffer. He testified that this account, as well as the other accounts, are processed and maintained in the regular course of Financial Services' business.

The last witness, Victor Urbanovich, has been an employee of Monarch for the past $2\frac{1}{2}$ years and presently is an assistant vice-president. He testified that he is familiar with the operation of Monarch's mortgage department This wit-

ness identified and reviewed the monthly and yearly computer printouts produced by Financial Services and supplied to and maintained by Monarch for the Genser account. He further testified that this account was maintained in the regular course of business since March 1968. Every transaction on the Genser account from March 1968 to the present was recorded with and reflected in the records processed by Financial Services and maintained by Monarch. He also testified that after reviewing the records the Gensers failed to make the payment for April 1976 and that this account remains in default as of that date.

Based on this evidence, defendants maintained that a proper foundation had not been established for the admission of these records.

The issue before this court is one of first impression in this State: What is the proper foundation to support the authenticity of a computer printout?[2] The leading case in New Jersey on the admissibility of computer printouts is *Sears, Roebuck & Co. v. Merla,* 142 *N. J. Super.* 205 (App. Div. 1976).[3] In that case the Appellate Division reviewed

[2]This decision also appears to be the first in the United States on the question of a proper foundation for the admissibility of computerized records under the *Uniform Rules of Evidence.* There are three other jurisdictions which have statutes modeled after the *Uniform Rules of Evidence*: *C. Z. Code,* Tit. 5, § 2962(13) (1963); *Kan. Stat.* § 60-460(m) (1965); *V. I. Code* Tit. 5, § 932(13) (1967); see 5 *Wigmore, Evidence* (Chadbourn rev. ed. 1974), § 1561a at 493–497 but research has not revealed any decisions on this issue in these jurisdictions. For a discussion of the admissibility of computer printouts under Kansas law, see Comment, "The Admissibility of Computer Printouts in Kansas," 8 *Washburn L. J.* 330 (1969).

[3]Two Appellate Division opinions, prior to the decision in *Merla,* dealt with computer-related evidence but did not specifically hold a computer printout to be admissible as a business record. In *State v. McGee,* 131 *N. J. Super.* 292 (App. Div. 1974), testimony that the National Crime Information Center's computer listed a gun as stolen was held to be inadmissible under the rationale of *Evid. R.* 63(13) where the informant "was under no duty to make a truth-

the trial judge's refusal to admit a computer printout as evidence of the defendant's indebtedness to Sears. *Id.* at 206–207. In reversing the trial judge's decision the court held "that as long as a proper foundation is laid, a computer printout is admissible on the same basis as any other business record." *Id.* at 207. The *Merla* court, however, did not specify what type of foundation would be required to establish admissibility.

In New Jersey the admissibility of business records is governed by *Evid. R.* 63(13), which provides as follows:

A writing offered as a memorandum or record of acts, conditions or events is admissible to prove the facts stated therein if the writing or the record upon which it is based was made in the regular course of a business, at or about the time of the act, condition or event recorded, and if the sources of information from which it was made and the method and circumstances of its preparation were such as to justify its admission.

This rule, fashioned after the *Uniform Rule of Evidence* 63(13),[4] see *Phillips v. Erie Lackawanna R. Co.,* 107 *N. J. Super.* 590, 595 (App. Div. 1969); *State v. Hudes,* 128 *N. J. Super.* 589, 599–600 (Cty. Ct. 1974), was promulgated by order of the Supreme Court of New Jersey, June 6, 1967, to be effective September 11, 1967, and superseded New Jersey's Uniform Business Records as Evidence Act, *N. J. S. A.* 2A:82–34 *et seq.*[5] See *Phillips v. Erie Lackawanna R.*

---

ful account of the facts furnished," *Id.* at 297, the computer printout itself was not offered into evidence and the testimony did not provide sufficient details as to either the procedures for collecting and processing the data or "the accuracy of those who operated the computer." *Id.* at 297–298. In *State v. Vogt,* 130 *N. J. Super.* 465 (App. Div. 1974), the court noted that if computer cards, on which were recorded information concerning irregular telephone calls, had been "formally offered in evidence, * * *, they could properly have qualified for admission as business records under *Evid. R.* 63 (13)." *Id.* at 468 (dictum).

49A *Uniform Laws Ann.* 637 (1965).

5For a historical analysis and a legislative background to New Jersey's evidence rules, see, *e. g., Phillips v. Erie Lackawanna R.*

*Co., supra* 107 *N. J. Super.* at 593–594, 599; *Brown v. Mortimer,* 100 *N. J. Super.* 395, 403 (App. Div. 1968). Although *Evid. R.* 63(13) differs from the Uniform Business Records as Evidence Act (UBREA)[6] in that "the custodian need not be called as a witness to attest to its authenticity," *Samuel Sheitelman, Inc. v. Hoffman,* 106 *N. J. Super.* 353, 356–357 (App. Div. 1969); compare *Evid. R.* 63(13) with *N. J. S. A.* 2A:82–35, the purpose of the new rule is substantially the same as its former counterpart. *Sas v. Strelecki,* 110 *N. J. Super.* 14, 20 (App. Div. 1970); *Brown v. Mortimer, supra* 100 *N. J. Super.* at 403. The court in *Mahoney v. Minsky,* 39 *N. J.* 208 (1963) noted the rationale underlying the uniform evidence laws:

> The basic theory of the uniform law is that records which are properly shown to have been kept as required normally possess a circumstantial probability of trustworthiness, and therefore ought to be received in evidence unless the trial court, after examining them and hearing the manner of their preparation explained, entertains serious doubt as to whether they are dependable or worthy of confidence. [at 218]

*Accord, Brown v. Mortimer, supra* 100 *N. J. Super.* at 403; *Falcone v. N. J. Bell Tel. Co.,* 98 *N. J. Super.* 138, 147 (App. Div. 1967); *Carroll v. Houtz,* 93 *N. J. Super.* 215, 219–220 (App. Div.

---

*Co., supra* 107 *N. J. Super.* at 593–599; *Fagan v. Newark,* 78 *N. J. Super.* 294, 308–323 (App. Div. 1963).

[6]A *Uniform Laws Ann.* p. 506 (1965). The UBREA, after which *N. J. S. A.* 2A:82–34 *et seq.* was modeled, provides in pertinent part:
 A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies as to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the Court, the sources of information, method and time of preparation were such as to justify its admission. [9A *Uniform Laws Ann.* 506 (1965)]
See 5 *Wigmore, op. cit.,* § 1561a, at 490. The UBREA has been adopted in its entirety in 17 states. See *Id.* at 493–497.

1966); see *Samuel Sheitelman, Inc. v. Hoffman, supra* 106 *N. J. Super.* at 356; *Webber v. McCormick,* 63 *N. J. Super.* 409, 416 (App. Div. 1960); *State v. Hudes, supra* 128 *N. J. Super.* at 599.

Both the UBREA and *Uniform Rule of Evidence* 63(13) liberalized and modernized the common law prerequisites for admission of business records. See *Smith v. First Nat'l Stores, Inc.,* 94 *N. J. Super.* 462, 467 (App. Div. 1967); *State v. Scelfo,* 58 *N. J. Super.* 472, 481 (App. Div. 1959); *State v. Hudes, supra* 128 *N. J. Super.* at 599–600; *McCormick, Evidence* (2d ed. 1972), § 307, at 720; 5 *Wigmore, op. cit.,* § 1561b at 499. Under the common law four elements were needed to be proven:

(1) the entries must have been original entries made in the routine of business, (2) must have been made upon personal knowledge of the recorder or of someone reporting to him, (3) must have been made at or near the time of the transaction recorded, and (4) the recorder and his informant had to be shown to be unavailable. [*State v. Hudes, supra* at 600.]

Accord *C. McCormick, op. cit.,* § 306, at 720. The modern New Jersey approach has eliminated the common law requirement of unavailability of the recorder, *State v. Hudes, supra* at 600, and the requirement of personal knowledge of the recorder, *State v. Martorelli,* 136 *N. J. Super.* 449, 453 (App. Div. 1975). In *Martorelli* the Appellate Division set forth the three requirements for admissibility under *Evid. R.* 63(13):

First, the record must be made in the regular course of business. Second, it must be prepared within a short time of the act, condition or event being described. Third, the source of information and the method of preparation must justify allowing it into evidence. [136 *N. J. Super.* at 453]

Accord, *State v. Hudes, supra,* 128 *N. J. Super.* at 600; see *Adams v. N. J. State Fair,* 71 *N. J. Super.* 528, 531 (App. Div. 1962) (UBREA decision finding "1955 balance"

entry not to have been made " 'at or near the time of the act * * * or event' "). In addition to the three elements of foundation set forth in *Martorelli*, the courts of New Jersey have mandated that the informant be "under a 'business duty' to supply honest information to the entrant." *Sas v. Strelecki, supra* 110 *N. J. Super.* at 20, 22 (statements by third parties in police officer's report held inadmissible); see *State v. Taylor*, 46 *N. J.* 316, 330–331 *cert.* den. 385 *U. S.* 885, 87 *S. Ct.* 103, 17 *L. Ed.* 2d 83 (1966) (third-party statements in doctor's record held inadmissible).

Although "the business entry exception to the hearsay rule * * * is generally limited to *business* records," our courts have applied this exception to "[r]ecords other than commercial payment records." *State v. Conners*, 125 *N. J. Super.* 500, 506 (Cty. Ct. 1973), aff'd in part, rev'd in part, 129 *N. J. Super.* 476 (App. Div. 1974) (emphasis supplied); see, *e. g., State v. Reddick*, 53 *N. J.* 66, 68 (1968) (autopsy report admitted after excising opinions as to cause of death); *State v. Gardner*, 51 *N. J.* 444, 462 (1968) (hospital reports with medical facts admitted so long as opinions as to cause of injury excluded); *State v. Provoid*, 110 *N. J. Super.* 547, 556–557 (App. Div. 1970) (police record of telephone calls reporting citizens' complaints admitted under *Evid. R.* 63(13)); *Schneiderman v. Strelecki*, 107 *N. J. Super.* 113, 118 (App. Div. 1969) (police report of automobile accident admissible under *Evid. R.* 63(13)); *Falcone v. N. J. Bell Tel. Co., supra* 98 *N. J. Super.* at 146 and n. 1 at 147 (treating physician's medical record admissible under UBREA); *Carroll v. Houtz, supra* 93 *N. J. Super.* at 221–223 (autopsy record containing reports of tissue and blood tests admissible under UBREA); *Hackensack Hosp. v. Tiajoloff*, 85 *N. J. Super.* 417, 419–420 (App. Div. 1964) (hospital books of account admissible under UBREA to prove services rendered but not their value); *State v. Laster*, 69 *N. J. Super.* 504, 514 (App. Div. 1961) (jail doctor's report book admissible under UBREA); *State v. Bassano*, 67 *N. J. Super.* 526, 534 (App. Div. 1961)

·(insurance adjuster's memorandum of telephone report of auto theft admissible under UBREA); *Schwartau v. Miesmer,* 50 *N. J. Super.* 399, 405, 413 (App. Div. 1958) (police blotter upon which time and date of an investigation was noted admissible under UBREA) (dictum); *Tsibikas v. Morrof,* 12 *N. J. Super.* 102, 111 (App. Div. 1951) (attorney's notebooks admissible under UBREA) (dictum); *State v. Hudes, supra* 128 *N. J. Super.* at 601, 603 (certificate of operability of a breatholyzer machine admissible under *Evid. R.* 63(13)). But see, *Farber v. Shell Oil Co.,* 47 *N. J. Super.* 48, 54–55 (App. Div. 1957) (lessor's internal proposal memorandum excluded under UBREA); *State v. Conners, supra* 125 *N. J. Super.* at 503, 507 (certificate of operability of a breatholyzer machine excluded under *Evid. R.* 63(13)). The newest development in this State is the admissibility of computer printouts. See *Sears, Roebuck & Co. v. Merla, supra.*

Only recently have the courts throughout this country faced the problem of admitting a new form of record—the computer printout. See *McCormick, op. cit.,* § 314 at 733. Computer-kept records differ in some crucial respects from traditional business records.[7] See generally Note, "Admissibility of Computer-Kept Business Records," 55 *Cornell L.*

---

[7]For discussions of the workings of computers and the special evidentiary problems inherent in the use of computerized business records, see, *e. g.,* Armstrong, "The Admissibility of Computer Print-Outs of Business Records," 41 *Miss. L. J.* 604 (1970); Bernacchi & Larsen, "Philosophy, Data Processing And The Rules of Evidence," 10 *Law Notes* 11 (1974); Ewald, "Discovery and The Computer," 1 *Litigation* 27 (1975); Freed, "Computer Print-Outs as Evidence," in 16 *Am. Jur., Proof of Facts* 273 (1965); Freed, "Computer Technology and Trial Technique," 1962 *Trial Law. Guide* 113; Furth, "Computers," in *Computers and the Law* (2 ed. Bigelow 1969), 26; Mills, Lincoln & Langhead, "Computer Output — Its Admissibility into Evidence," 3 *L. & Computer Tech.* 14 (1970); Roberts, "A Practitioner's Primer on Computer-Generated Evidence", 41 *U. Chi. L. Rev.* 254 (1974); Tapper, "Evidence From Computers," 4 *Rutgers J. Computers and L.* 324 (1975). ·

*Rev.* 1033, 1034–1036 (1970). Despite these differences, courts have acknowledged that "[c]omputerized bookkeeping has become commonplace," *Sears, Roebuck & Co. v. Merla, supra* 142 *N. J. Super* at 207; see, *e. g., United States v. Russo,* 480 *F.* 2d 1228, 1239 (6 Cir. 1973), *cert.* den. 414 *U. S.* 1157, 94 *S. Ct.* 915, 39 *L. Ed.* 2d 109 (1974), and that "the business records exception is intended to bring the realities of the business world into the courtroom." *Sears, Roebuck & Co. v. Merla, supra* 142 *N. J. Super.* at 207; accord, *Union Elec. Co. v. Mansion House Center No. Redev. Co.,* 494 *S. W.* 2d 309, 315 (Mo. Sup. Ct. 1973) ; *Transport Indem. Co. v. Seib,* 178 *Neb.* 253, 259, 132 *N. W.* 2d 871, 875 (Sup. Ct. 1965).

In furtherance of the rationale behind this exception, state and federal courts have found computer printouts admissible as a business record according to their applicable evidence rules:[8] (1) under the *Uniform Rules of Evidence,* see *Sears, Roebuck & Co. v. Merla, supra* 142 *N. J. Super.* at 207; (2) under the UBREA, see *Merrick v. United States Rubber Co.,* 7 *Ariz. App.* 433, 435–436, 440 *P.* 2d 314, 316–317 (App. Ct. 1968) ; *State v. Veres,* 7 *Ariz. App.* 117, 125–126, 436 *P.* 2d 629, 637–638 (App. Ct. 1968) (bank records prepared by automatic encoding machine), *cert.* den. 393 *U. S.* 1014, 89 *S. Ct.* 613, 21 *L. Ed.* 2d 559 (1969) ; *Union Elec. Co. v. Mansion House Center No. Redev. Co., supra,* at 314–315; *Bobbie Brooks, Inc. v. Hyatt,* 195 *Neb.* 596, 598–600, 239 *N. W.* 2d 782, 784–785 (Sup. Ct. 1976) ; *State v. Watson,* 192 *Neb.* 44, 45–49, 218 *N. W.* 2d 904, 905–907 (Sup. Ct. 1974) ; *Transport Indem. Co. v. Seib, supra* 178 *Neb.* at 255–260, 132 *N. W.* 2d at 873–876 ; *Endicott Johnson Corp. v. Golde,* 190 *N. W.* 2d 752, 754–757 (N. D. Sup. Ct. 1971) (computer-prepared invoices) ; *In re Matthews,* 47 *Pa. D. & C.* 2d 529, 531, 539 (Orph. D. Ct.

---

[8]Note that by statute, Florida and Iowa have specifically exempted computer records from the hearsay rule. *Fla. Stat. Ann.* § 92.36 (2) (Supp. 1969) ; *Iowa Code Ann.* § 622.28 (Supp. 1970).

1969); *Seattle v. Heath,* 10 *Wash. App.* 949, 956, 520 *P.* 2d 1392, 1396 (App. Ct. 1974); but see *State v. Walker,* 16 *Wash. App.* 637, 639, 557 *P.* 2d 1330, 1332 (App. Ct. 1976); (3) under the Commonwealth Fund Act,[9] see *United States v. Fendley,* 522 *F.* 2d 181, 187 (5 Cir. 1975); *United States v. Liebert,* 519 *F.* 2d 542, 547 (3 Cir. 1975), *cert.* den. 423 *U. S.* 985, 96 *S. Ct.* 392, 46 *L. Ed.* 2d 301 (1975); *United States v. Greenlee,* 517 *F.* 2d 899, 902, 906 (3 Cir. 1975), *cert.* den. 423 *U. S.* 985, 96 *S. Ct.* 391, 46 *L. Ed.* 2d 301 (1975); *United States v. Russo, supra* at 1239–1240; *United States v. Edick,* 432 *F.* 2d 350, 354 (4th Cir. 1970); *United States v. De Georgia,* 420 *F.* 2d 889, 891, 893 and n. 11, 894 (9 Cir. 1969); *Olympic Ins. Co. v. H. D. Harrison, Inc.,* 418 *F.* 2d 669, 670 (5 Cir. 1969); *D & H Auto Parts, Inc. v. Ford Marketing Corp.,* 57 *F. R. D.* 548, 551–552 (E. D. N. Y. 1973); *Rogers v. Frank Lyon Co.,* 253 *Ark.* 856, 857–860, 489 *S. W.* 2d 506, 507–509 (Sup. Ct. 1973); *Smith v. Bank of the South,* 141 *Ga. App.* 114, 115, 232 *S. E.* 2d 629, 630 (App. Ct. 1977); *Cotton v. John W. Eshelman & Sons, Inc.,* 137 *Ga. App.* 360, 365, 223 *S. E.* 2d 757, 761 (App. Ct. 1976); *Sierra Life Ins. Co. v. First Nat'l Life Ins. Co.,* 85 *N. M.* 409, 412–413, 512 *P.* 2d 1245, 1248 (Sup. Ct. 1973); *Ed Guth Realty, Inc. v. Gingold,* 34 *N. Y.* 2d 440, 451–452, 358 *N. Y. S.* 2d 367, 374, 315 *N. E.* 2d 441, 446 (Ct. App. 1974); (4) under the new Federal Rules of Evidence,[10] see *United States v. Scholle,* 553 *F.* 2d 1109, 1124–1125 (8 Cir. 1977); (5) under the common

---

[9]This act was drafted by a committee appointed by the Commonwealth Fund of New York, 5 *Wigmore, op cit.,* § 1561a at 489, and first enacted by the State of New York in 1928, see *Armstrong, supra* at 2. Eight states and the Federal Government adopted the Commonwealth Fund Act. See 5 *Wigmore, op. cit.,* § 1561a at 493–497, n. 6. For the text of this act, see *id.* at 489–490.

[10]*Fed. R. Evid.* 803(6) (superseding 28 *U. S. C.* § 1732 (1964) (federal version of Commonwealth Fund Act)).

law rule,[11] see *Brown v. Commonwealth,* 440 *S. W.* 2d 520, 524 (Ky. Ct. App. 1969) ; *State v. Hodgeson,* 305 *So.* 2d 421, 428 (La. Sup. Ct. 1974) ; *King v. State ex rel. Murdock Acceptance Corp.,* 222 *So.* 2d 393, 398 (Miss. Sup. Ct. 1969) ; and (6) under distinct state statutes, see *People v. Cohen,* 59 *Cal. App.* 3d 241, 249, 130 *Cal. Rptr.* 656, 661 (D. Ct. App. 1976) (ruling under *Cal. Evid. Code* § 1271 (West 1966)), *cert.* den. 429 *U. S.* 1045, 97 *S. Ct.* 748, 50 *L. Ed.* 2d 758 (1977) ; *Dept. of Mental Health v. Beil,* 44 *Ill. App.* 3d 402, 409, 2 *Ill. Dec.* 655, 660, 357 *N. E.* 2d 875, 880 (App. Ct. 1976) (ruling under *Ill. Rev. Stat.* c. 38, § 115–5 (1971)) (admissible but foundation in this case found inadequate) ; *People v. Gauer,* 7 *Ill. App.* 3d 512, 514– 515, 288 *N. E.* 2d 24, 25 (App. Ct. 1972) (same) ; *State v. Springer,* 283 *N. C.* 627, 636, 197 *S. E.* 2d 530, 536 (Sup. Ct. 1973) (ruling under *N. C. Gen. Stat.* §§ 55–37.1, 55A– 27.1 (1965), a statute dealing specially with the admissibility of corporate computer records) (admissible but insufcient foundation in this case) ; *Texas Warehouse Co. of Dallas, Inc. v. Springs Mills, Inc.,* 511 *S. W.* 2d 735, 743 (Tex. Civ. App. 1974) (ruling under *Tex. Rev. Civ. Stat. Ann.* art. 3737e, §§ 1–4 (1972)) ; *Railroad Comm'n v. Southern Pac. R. Co.,* 468 *S. W.* 2d 125, 128–129 (Tex. Civ. App. 1971) (same) ; *Arnold D. Kamen & Co. v. Young,* 466 *S. W.* 2d 381, 387 (Tex. Civ. App. 1971) (same) (not admitted) ; *Gassett v. State,* 532 *S. W.* 2d 328, 330–331 (Tex. Cr. App. 1976) (same).

Although many courts have ruled upon the admissibility of computer printouts, only some of them have addressed the question of what foundation is required.[12] See *United*

---

[11]The common law regarding the admissibility of business records is succinctly summarized in Comment, "Business Records as an Exception to the Hearsay Rule," 21 *La. L. Rev.* 449, 451 (1961).

[12]For an excellent guide for the practitioner on laying a proper foundation for computer printouts, see Freed, Fenwick and McGonigal, "Mock Trial: Admissibility of Computerized Business Rec-

*States v. Scholle, supra* at 1124–1125; *United States v. Fendley, supra* at 185–187; *United States v. Russo, supra* at 1239–1240; *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra* at 551–552; *Merrick v. United States Rubber Co., supra* 7 *Ariz. App.* at 435–436, 440 *P.* 2d at 316–317; *Rogers v. Frank Lyon Co., supra,* 253 *Ark.* at 857–860, 489 *S. W.* 2d at 507–509; *Smith v. Bank of the South, supra* 141 *Ga. App.* at 114–115, 232 *S. E.* 2d at 630; *Cotton v. John W. Eshleman & Sons, Inc., supra* 137 *Ga. App.* at 363–365, 223 *S. E.* 2d at 760–761; *Dept. of Mental Health v. Beil, supra* 44 *Ill. App.* 3d at 409, 2 *Ill. Dec.* at 660, 357 *N. E.* 2d at 880; *People v. Gauer, supra* 7 *Ill. App.* 3d at 514–515, 288 *N. E.* 2d at 24–25; *State v. Hodgeson, supra* at 427–428; *King v. State ex rel. Murdock Acceptance Corp., supra* at 396–398; *Bobbie Brooks, Inc. v. Hyatt, supra* 195 *Neb.* at 599–600, 239 *N. W.* 2d at 784–785; *State v. Watson, supra* 192 *Neb.* at 45–49, 218 *N. W.* 2d at 905–907; *Transport Indem. Co. v. Seib, supra* 178 *Neb.* at 255–260, 132 *N. W.* 2d at 873–875; *State v. Springer, supra* 283 *N. C.* at 634–636, 197 *S. E.* 2d at 535–536; *Endicott Johnson Corp. v. Golde, supra* at 755–757; *In re Matthews Estate, supra* at 531–539; *Texas Warehouse Co. of Dallas, Inc. v. Springs Mills, Inc., supra* at 739–743; *Railroad Comm'n v. Southern Pac. R. Co., supra* at 128–129; *Arnold D. Kamen & Co. v. Young, supra* at 387; *Seattle v. Heath, supra* 10 *Wash. App.* at 953–956, 520 *P.* 2d at 1395–1397.

The foundation requirements as set forth in these cases can be broken down into six elements. The first consideration is whether the foundation witness must have personal knowledge of the act or event recorded or, more specifically, the need to produce the witness who originally supplied the information recorded on the computer tape. The majority of

ords," 15 *Jurimetrics J.* 206 (1975) (complete transcript of foundation evidence and compilation of cases, statutes and articles). See also, *In re Matthews, supra* at 531–535 (transcript of testimony showing method of preparation and controls on computer input and output).

courts that have discussed this issue have determined that such personal knowledge is not necessary. See *United States v. Fendley, supra* at 185 (no need for foundation to attest to accuracy of information contained in computer document); *Rogers v. Frank Lyon Co., supra* 253 *Ark.* at 860, 489 *S. W.* 2d at 508–509 (lack of personal knowledge did not affect admissibility of computer records); *Smith v. Bank of the South, supra* 141 *Ga. App.* at 114, 232 *S. E.* 2d at 630 (same); *Cotton v. John W. Eshelman & Sons, Inc., supra* 137 *Ga. App.* at 364, 223 *S. E.* 2d at 760 (while employees who furnished entries had personal knowledge, foundation witness need not); *State v. Watson, supra* 192 *Neb.* at 46–48, 218 *N. W.* 2d at 906 (personal knowledge not required) (by implication); *State v. Springer, supra* 283 *N. C.* at 633–634, 636, 197 *S. E.* 2d at 535–536 (same); *Endicott Johnson Corp. v. Golde, supra* at 756 (same) (by implication); *Seattle v. Heath, supra* 10 *Wash. App.* at 953–954, 520 *P.* 2d at 1395–1397 (recorder of information need not have personal knowledge); *cf. Transport Indem. Co. v. Seib, supra* 178 *Neb.* at 256–258, 132 *N. W.* 2d at 873–875 (court inferred that computations were within witness' knowledge but determined that production of persons who originally supplied information was unnecessary). But see *Railroad Comm'n v. Southern Pac. R. Co., supra* at 129 (court required proof that computer records "were based upon information within the personal knowledge of a person whose duties included collection of such information"); *Arnold D. Kamen & Co. v. Young, supra* at 387 (under statutory interpretation court required personal knowledge of act or event recorded), criticized in 24 *Baylor L. Rev.* 161 (1972) (Texas statute does not by its terms require such a showing).

█ The majority rulings on this point of the personal knowledge requirement are consistent with New Jersey's ruling which eliminated the common law requirement of personal knowledge. See *State v. Martorelli, supra* 136 *N. J. Super.* at 453. Thus, this court will not require proof of per-

sonal knowledge on the part of the entrant of the information recorded where computer printouts are being admitted as a business record.

The qualification of the foundation witness is the second consideration. Numerous cases in other jurisdictions have examined the issue of whether the witness in question is the custodian of the computer records or otherwise qualified to be the foundation witness. *Transport Indem. Co. v. Seib, supra,* the first case in this area, demanded the highest qualifications for the foundation. The witness was not only a director of the computer-processing company and the custodian of records, but he also had prepared and supervised the preparation of the computer records. *Id.* 178 *Neb.* at 255-256, 132 *N. W.* 2d at 873. More recent decisions, however, have declared that there is no need for the preparer of the computer records to testify. See *United States v. Fendley, supra* at 185; *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra* at 551; *King v. State ex rel. Murdock Acceptance Corp., supra* at 396; *cf. Bobbie Brooks, Inc. v. Hyatt, supra* 195 *Neb.* at 599-600, 239 *N. W.* 2d at 784-785 (present custodian rather than custodian at the time of preparation of records allowed to testify). In some cases the courts have required that the supervisor of the computer-processing department testify, see *People v. Gauer, supra* 7 *Ill. App.* 3d at 514, 288 *N. E.* 2d at 25 (keeper of records who had direct supervision and control of records) (by implication); *King v. State ex rel. Murdock Acceptance Corp., supra* at 396 (assistant treasurer and accounting manager of data-processing department); *Railroad Comm'n v. Southern Pac. R. Co., supra* at 128 (person in charge of data-processing department who supervised computerized accounting records); whereas other courts have permitted different persons to be the foundation witness, see *United States v. Scholle, supra* at 1123 (section chief of department who developed computer system); *Merrick v. United States Rubber Co., supra* 7 *Ariz. App.* at 435, 440 *P.* 2d at 316 (an employee of the credit office who was familiar with ac-

count); *State v. Hodgeson, supra* at 427 (comptroller-manager of company who supervised compilation of data which was later submitted to a computer service); *Bobbie Brooks, Inc. v. Hyatt, supra* 195 *Neb.* at 599–600, 239 *N. W.* 2d at 784–785 (present custodian rather than custodian who supervised making of record in question). Witnesses have been found qualified to testify by reason of their expertise in computers, see *Id.* at 598, 239 *N. W.* 2d at 784 (an expert in computer programming); *Texas Warehouse Co. of Dallas, Inc. v. Springs Mills, Inc., supra* at 742 (court-qualified expert in court programming), or by reason of their "training, experience and position to testify about the [computer] system." *United States v. Scholle, supra* at 1123, 1125 (witness also developed the computer retrieval system); accord, *United States v. Russo, supra* at 1241 (witness also "showed a familiarity with the use of the particular computers in question"). Other jurisdictions have gone so far as to eliminate any need for the witness' personal knowledge of the physical operations of the computer equipment and require only that the witness be generally familiar with the accounting and recording process. See *Merrick v. United States Rubber Co., supra* 7 *Ariz. App.* at 435, 440 *P.* 2d at 316; *Cotton v. John W. Eshelman & Sons, Inc., supra* 137 *Ga. App.* at 363, 223 *S. E.* 2d at 760–761 (but witness was direct supervisor who would certify to records' accuracy); *Endicott Johnson Corp. v. Golde,* 190 *N. W.* 2d at 756–757; *cf. Smith v. Bank of the South, supra* 141 *Ga. App.* at 114, 232 *S. E.* 2d at 630 (limited knowledge). See also *Bobbie Brooks, Inc. v. Hyatt, supra* 195 *Neb.* at 600, 239 *N. W.* 2d at 785 (witness' personal knowledge of mode of preparation not required). Furthermore, in one case, the witness was permitted to testify from the company records rather than from his own general knowledge. *Rogers v. Frank Lyon Co., supra* 253 *Ark.* at 859, 489 *S. W.* 2d at 507.

All of the cases which have dealt with the qualifications of the foundation witness involve statutes or case law which delineate the type of witness required. New Jersey

eliminated its prior requirement of having a custodian or other qualified witness testify when it adopted *Evid. R.* 63(13). See *Samuel Sheitelman, Inc. v. Hoffman, supra* 106 *N. J. Super.* at 356–357. No specific person must be called to supply the foundation testimony for the admission of business records. However, whoever testifies must be in a position to supply the foundation specified in *Evid. R.* 63(13), *i. e.,* the regular course of business, the time of the making of the record and the event recorded, the sources of information recorded, and finally, the methods and circumstances of the computer record's preparation. This court agrees with the following statement in *State v. Springer, supra* 283 *N. C.* at 636, 197 *S. E.* 2d at 536:

> * * * a proper foundation for [computer] evidence is laid by testimony of a witness who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy.

Thus, in providing information as to the methods of preparation, the foundation witness should also be able "to testify as to the type of computer employed, the permanent nature of the record storage, and how daily processing of information to be fed into the computer was conducted, resulting in permanent records." *Railroad Comm'n v. Southern Pac. R. Co., supra* at 128.

The third element of foundation testimony is proof that the computer records were made in the ordinary course of business. See *United States v. Scholle, supra* at 1125: *United States v. Russo, supra* at 1241; *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra* at 552; *Dept. of Mental Health v. Beil, supra* 44 *Ill. App.* 3d at 409, 2 *Ill. Dec.* at 660, 357 *N. E.* 2d at 880; *State v. Hodgeson, supra* at 428: *King v. State ex rel. Murdock Acceptance Corp., supra* at 398; *Bobbie Brooks, Inc. v. Hyatt, supra* 195 *Neb.* at 600, 239 *N. W.* 2d at 785; *Transport Indem. Co. v. Seib, supra* 178 *Neb.* at 257–258, 260, 132 *N. W.* 2d at 874; *State v.*

*Springer, supra* 283 *N. C.* at 636, 197 *S. E.* 2d at 536; *Railroad Comm'n v. Southern Pac. R. Co., supra* at 129; *Seattle v. Heath, supra* 10 *Wash. App.* at 956, 520 *P.* 2d at 1397. This proof would include testimony that the computer printouts were routinely prepared, see *United States v. Scholle, supra* at 1125; *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra* at 552; *King v. State ex rel. Murdock Acceptance Corp., supra* at 398, rather than specifically prepared for trial, see *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra* at 552; but see *Transport Indem. Co. v. Seib, supra* 178 *Neb.* at 260, 132 *N. W.* 2d at 875; *McCormick, op.,* § 314, at 734; that "they were relied upon by [the company involved] as sufficiently accurate for business purposes," *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra* at 552; see *United States v. Russo, supra* at 1240, and where the computer processing is done by a third party, that the information was processed through the computer as agreed upon, see *Transport Indem. Co. v. Seib, supra* 178 *Neb.* at 258, 132 *N. W.* 2d at 874. Requiring the above proof that the computer printout was made in the ordinary course of business is obviously mandated by *Evid. R.* 63(13) prior to the admission of such evidence. See, *e. g., State v. Martorelli, supra* 136 *N. J. Super.* at 453.

██ In providing an adequate foundation, the fourth consideration is the time of preparation of the computer printout. The requirement that the entry be made "at or about the time of the act * * * recorded," *Evid. R.* 63(13), is satisfied so long as the input is placed into the computer "within a reasonable time after each act or transaction to which it relates." *United States v. Russo, supra* at 1240; see *Dept. of Mental Health v. Beil, supra* 44 *Ill. App.* 3d at 409, 2 *Ill. Dec.* at 660, 357 *N. E.* 2d at 880; *State v. Hodgeson, supra* at 428; *King v. State ex rel. Murdock Acceptance Corp., supra* at 398; *Bobbie Brooks, Inc. v. Hyatt, supra* 195 *Neb.* at 600, 239 *N. W.* 2d at 785 (transactions "recorded within one week of their occurrence within the regular course of business"); *Transport Indem. Co. v. Seib,*

*supra,* 478 *Neb.* at 259, 132 *N. W.* 2d at 875 (information fed into computer in a systematic way on a day-to-day basis) ; *State v. Springer, supra* 283 *N. E.* at 636, 197 *S. E.* 2d at 536. It is not required that the printout itself be made at that time. *United States v. Russo, supra* at 1240 (computer printout made 11 months after last transaction recorded). Although the printout can be made at some later date, it cannot be made specifically in preparation for trial or else it will not have been made in the regular course of business. See *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra,* at 552. Requiring the above proof is also consistent with the mandates of *Evid. R.* 63(13).

 The fifth element of a proper foundation is the source of information from which the computer printout was made. Consonant with the requisites of *Evid. R.* 63 (13), the cases in other jurisdictions demand that the sources of information be specified. See *United States v. Scholle, supra* at 1125; *United States v. Russo, supra* at 1240; *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra* at 552; *Dept. of Mental Health v. Beil, supra* 44 *Ill. App.* 3d at 409, 2 *Ill. Dec.* at 660, 357 *N. E.* 2d at 880; *State v. Hodgeson, supra* at 428; *King v. State ex rel. Murdock Acceptance Corp., supra* at 398; *Bobbie Brooks, Inc. v. Hyatt, supra* 195 *Neb.* at 600, 239 *N. W.* 2d at 785; *Seattle v. Heath, supra,* 10 *Wash. App.* at 956, 520 *P.* 2d at 1397 (gives complete list of sources). The original source of the computer program must be delineated, *United States v. Scholle, supra* at 1125, and the reliability and trustworthiness of the information fed into the computer must be established. *United States v. Russo, supra* at 1240; *King v. State ex rel. Murdock Acceptance Corp., supra* at 398, followed in *Dept. of Mental Health v. Beil, supra* 44 *Ill. App.* 3d at 409, 2 *Ill. Dec.* at 660, 357 *N. E.* 2d at 880, and *State v. Hodgeson, supra* at 428, and *Seattle v. Heath, supra* 10 *Wash. App.* at 956, 520 *P.* 2d at 1397. The foundation witness should "describe[d] in detail the sources of information upon which the printout was based," *United States v.*

*Scholle, supra* at 1125, explain, where necessary, the sources and meaning of any calculations, formulas or abbreviations appearing in the computer printout, see *Transport Indem. Co. v. Seib, supra,* 178 *Neb.* at 258, 132 *N. W.* 2d at 874, and show that the printouts were not only prepared by information supplied by a certain source but were capable of being verified by that source. *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra* at 552.

The sixth, and perhaps the most important, element of foundation proof is the method and circumstances of the preparation of the computer printout. Most courts have required a complete and comprehensive description of the method of preparation. See, *e. g., People v. Gauer, supra* 7 *Ill. App.* 3d at 514, 288 *N. E.* 2d at 25; *King v. State ex rel. Murdock Acceptance Corp., supra* at 398; *Transport Indem. Co. v. Seib, supra* 178 *Neb.* at 257, 132 *N. W.* 2d at 874 (141 pages of record dealt with method of preparation —the most provided in any case). This description must include testimony as to (1) the competency of the computer operators, *King v. State ex rel. Murdock Acceptance Corp., supra* at 398; see *United States v. Russo, supra* at 1241 (persons who feed information to computer perform accurately); *Railroad Comm'n v. Southern Pac. R. Co., supra* at 129, (preparation of records done "by persons who understood operation of the equipment and whose regular duty was to operate it"); (2) the type of computer used and its acceptance in the field as standard and efficient equipment, *King v. State ex rel. Murdock Acceptance Corp., supra* at 397–398, followed in *Dept. of Mental Health v. Beil, supra* 44 *Ill. App.* 3d at 409, 2 *Ill. Dec.* at 660, 357 *N. E.* 2d at 880, and *State v. Hodgeson, supra* at 428; *Railroad Comm'n v. Southern Pac. R. Co., supra,* at 129; *Seattle v. Heath, supra* 10 *Wash. App.* at 956, 520 *P.* 2d at 1397; see *United States v. Scholle, supra* at 1125 (assumption that equipment is functioning properly); accord, *United States v. Russo, supra* at 1239–1240; (3) the procedure for the input and output of information, including controls, tests and checks

for accuracy and reliability, see *United States v. Scholle, supra* at 1125; *United States v. Russo, supra* at 1239; *King v. State ex rel. Murdock Acceptance Corp., supra* at 397–98; *Bobbie Brooks, Inc. v. Hyatt, supra* 195 *Neb.* at 598–600, 239 *N. W.* 2d at 785; *Texas Warehouse Co. of Dallas, Inc. v. Springs Mills, Inc., supra* at 742; see also, *People v. Gauer, supra* 7 *Ill. App.* 3d at 514, 288 *N. E.* 2d at 25 (mere conclusion on part of foundation witness that records were made in the ordinary course of business and were reliable, held to be an insufficient foundation for computer printouts); but see *D & H Auto Parts, Inc. v. Ford Marketing Corp., supra* at 552 (no requirement for "'oral testimony concerning the reliability of the machine operations'") (quoting from Freed, "A Lawyer's Guide Through the Computer Maze," 6 *Prac. Law.* 15, 28 (1960)); (4) the mechanical operations of the machine, see *United States v. Scholle, supra* at 1125; *United States v. Russo, supra* at 1239; *King v. State ex rel. Murdock Acceptance Corp., supra* at 397 (provided but not specifically required); *Texas Warehouse Co. of Dallas, Inc. v. Springs Mills, Inc., supra* at 742; but see *State v. Watson, supra* 192 *Neb.* at 48–49, 218 *N. W.* 2d at 906–907 (failure to explain the workings of the machine as was done in *Transport Indem. Co. v. Seib, supra,* did not effect admissibility of bank records; distinguishes *Seib* decision on basis that bank was not party to this action as in *Seib*), and (5) the meaning and identity of the records themselves, see *People v. Gauer, supra* 7 *Ill. App.* 3d at 514, 288 *N. E.* 2d at 25; *Transport Indem. Co. v. Seib, supra* 178 *Neb.* at 258, 132 *N. W.* 2d at 874. The five factors listed regarding the methods of preparation are not intended to be exhaustive. A trial court may require further proof as is necessary to justify the admission of a computer record.

In conclusion, under *Evid. R.* 63(13) a proper foundation for the admissibility of a computer printout as a business record should be provided by a person who may lack personal knowledge of the events recorded but is sufficiently familiar with the computerized record and the

methods under which they were prepared so as to testify that (1) the computer record, as opposed to the printout, was made within a reasonable time after the happening of event or transaction recorded; (2) the computer record and printouts were made in the regular course of business; and (3) the methods and circumstances, as heretofore explained in this opinion, demonstrated that the computer and the printout were reliable and trustworthy as as to justify their admission.

Using the above principles to evaluate the foundation presented here, the court initially notes that in this case the actual route of the information from its source to the computer record is somewhat different from that of the previously cited cases. The mortgage payment, accompanied by a prepunched computer card, is sent by the mortgagee to the postoffice box of Wood-Ridge where the cards and the payments are matched and checked for the amounts. The checks are then forwarded to Monarch and the computer cards are sent to Financial Services. Financial Services processes these cards through its computer and obtains a daily readout of the total daily payments, which readout is then checked against the total amount on the checks received by Monarch. Financial Services then forwards the daily computer printout to Monarch, which receives it on the next day and cross-checks the totals. Three witnesses were called to explain the procedure involved in processing these checks and computer cards.

Defendants, however, have raised several objections to the admission of these computer printouts, including the qualifications of the foundation witnesses and the reliability and operations of the computer itself. Throughout the testimony of these witnesses defendants objected that they did not have personal knowledge of the mortgage transactions recorded on the computer printout. As I have previously noted, a foundation witness does not need to have personal knowledge of the transaction recorded. Therefore, as to all three witnesses this objection is without merit.

■ However, there is a question as to whether any of the three foundation witnesses was "familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render[s] [this] evidence trustworthy." *State v. Springer, supra* 283 *N. C.* at 636, 197 *S. E.* 2d at 536. The first witness was in a position to testify as to the general practice of processing the mortgage checks and computer cards at Wood-Ridge since he had been the assistant vice-president of Wood-Ridge for 13 years and was familiar with the business transactions and work of Wood-Ridge. He did not necessarily have to be the direct supervisor of the bank's processing of defendant's checks and computer cards.

■ Urbanovich, the third witness called, has been the assistant vice-president of Monarch for the past ten years and was generally familiar with the workings of the mortgage department of the bank by reason of being in charge of the accounting at the bank. He was also familiar with the arrangements for processing mortgage payments that Monarch has with Wood-Ridge and Financial Services. This court finds that Urbanovich was sufficiently familiar with the methods and circumstances of processing mortgage payments from Monarch to Financial Services so as to be a proper foundation witness. Any objections made by defendant as to his qualifications are overruled.

■ The key foundation witness in this case was Kieper, the office manager of Financial Services, who is responsible for handling mortgage installment loans and has been in Financial Services employ for 17 years. He neither is a computer expert nor did he set up the computer mechanics of this particular service. However, expertise in computers or setting up the particular computer program is not required under the reasoning and holding of this decision. The objection as to Kieper's lack of personal knowledge as to the relationship between Monarch and Financial Services

is not meritorious since he has demonstrated a general familiarity with that relationship and that is all that will be required by this court.

There is a question, though, as to whether Kieper is sufficiently familiar with the methods and circumstances of the computer printout's preparation. A review of the testimony before this court reveals that adequate proof has been presented to show that the computer record was made within a reasonable time of the receipt of the mortgage payments and that the computer records and the printouts were made in the ordinary course of business for Monarch and Financial Services. The problem arises when the testimony as to the actual preparation of the printout is examined. Kieper testified as to what information was received by Financial Services to initiate a new mortgage loan account but he did not explain what Financial Services does with this information or how the computer program on a new account originates.[13] Further testimony revealed the method by which daily payment information is received from Wood-Ridge, the procedures for supplying daily, monthly and yearly readouts, the method of checking totals and the fact that the information received from Wood-Ridge (or Monarch in irregular payment situations) is processed through the computer. He did not provide information on the type of computer used and its acceptance in the field as standard, efficient and accurate equipment. This witness did not testify as to the competency of those who program the computer and process the daily input, nor did he fully explain the input controls or the mechanics of the machines. In particular, Kieper had no knowledge of the procedure for handling "irregular payments" which came from Monarch.

On the evidence presented to this court, plaintiff has failed to lay the proper foundation. But in light of the

---

[13]It is not clear whether Kieper is unable to supply this information or whether counsel merely failed to inquire into this matter.

fact that no judgment has yet been entered here and the conclusions reached in this opinion are novel in this State, plaintiff will be permitted on a date to be fixed by the court to reopen its case in order to have an opportunity to submit additional evidence to lay the proper foundation in accordance with the rulings herein.[14]

[14]The court notes that "the burden of presenting an adequate foundation for receiving the evidence [is] on the part[y] seeking to introduce it rather than upon the party opposing its introduction." *United States v. Russo, supra* at 1241.