**Tawfic Al GAILANI and Abdallah Adel, Appellants,**

v.

**RIYAD BANK HOUSTON AGENCY, Appellee.**

No. 08–99–00139–CV.

Court of Appeals of Texas, El Paso.

April 6, 2000.

Rehearing Overruled May 24, 2000.

Robert Hohenberger, H. Miles Cohn, Sheiness, Scott, Grossman & Cohn, L.L.P., Houston, for Appellant.

Daryl Allen Vance, Seguin, Janet E. Militello, Patricia Williams Prewitt, Locke Liddell & Sapp L.L.P., Mallory Wade Turner, Houston, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## O P I N I O N

RICHARD BARAJAS, Chief Justice.

This is an appeal from an order granting summary judgment in favor of Riyad Bank Houston Agency, (Plaintiff/Appellee), on its underlying suit to collect on a promissory note. For reasons stated below, we reverse and remand.

## I. SUMMARY OF THE EVIDENCE

On September 15, 1993, Riyad Bank, Houston Agency, ("Riyad"), executed a loan agreement with PanAmerican Supply Company, ("PanAmerican"), under which Riyad agreed to extend to Pan American a $2,000,000 line of credit. As collateral for

the loan, PanAmerican agreed to give a "first priority security interest in favor of Riyad in all of the Borrower's inventory, accounts receivable, and equipment." [1] Tawfic Al Gailani, Abdallah Adel, and Mohammad Saed Al Ghamdi were named as guarantors of the loan. PanAmerican, Gailani, Adel, and Ghamdi executed a promissory note on October 25, 1994 pursuant to the September 15, 1993 loan agreement. The note indicated that Pan American was the "maker," and the guarantors were the "co-makers."

On July 31, 1995, Riyad made a demand on the maker and co-makers of the promissory note for payment. On November 14, 1995, after Riyad foreclosed on the accounts receivable, it conducted a foreclosure sale, selling the accounts receivable that were pledged as a security interest to secure the line of credit. Prior to conducting the sale, Riyad made the following efforts to put the debtors as well as the general public on notice of the sale: (1) it mailed notices of intent to hold the foreclosure sale to the maker and co-makers of the promissory note on October 31, 1995; (2) it posted a notice of the foreclosure sale at the Harris County Courthouse on November 1, 1995; and (3) it placed a general notice of the foreclosure sale in the Houston Chronicle on November 3, 1995 and November 5, 1995.

The foreclosure sale was held on November 14, 1995. Neither the maker, nor the co-makers were present for the sale. Riyad, the sole bidder, purchased the collateral for $10. PanAmerican, who filed Chapter 7 bankruptcy on August 6, 1996, estimated the value of the accounts to be $2.9 million. Riyad, however, claims that the accounts were valueless. After the sale proceeds and other credits had been deducted, Riyad claimed that $1,908,309.51 was still due.

---

1. The agreement also contained the following acceleration clause: "Upon the occurrence of an Event of Default, Riyad may, without further notice to the Borrower, declare all sums due and owing hereunder or any part thereof to be immediately due and payable with no further extensions of credit to be granted."

On March 22, 1996, Riyad filed Plaintiff's First Amended Original Petition in which it sought recovery for the claimed deficiency from PanAmerican, Gailani, Adel, and Ghamdi. Pan American and Ghamdi were subsequently severed from the law suit. Riyad filed motions for summary judgment against Adel and Gailani on April 19, 1996 and June 12, 1998, respectively. In its motions for summary judgment, Riyad argued that:

> Riyad Bank has proved each element of its cause of action against Adel as a matter of law; *MMP, Ltd. v. Jones,* 710 S.W.2d 59 (Tex.1986), and because there is no genuine issue of material fact as to Adel's [and Gailani's] joint and several liability to Riyad Bank for the entire amount due and owing under the Promissory Note.

*Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470 (Tex.1991).

Riyad also argued that "[a]t all times and in all respects, the Bank acted in a commercially reasonable manner in the method, manner, time, place, and terms of the public foreclosure sale. As such, Riyad Bank fulfilled its obligations, if any, under the Texas Business and Commerce Code." The trial court granted partial summary judgment against Adel and Gailani.

Then on October 27, 1998, Gailani filed a counterclaim against Riyad for placing his name, along with Bandariyah International, the largest account debtor of PanAmerican, on a "black list" maintained by the Saudi Arabian Monetary Agency. According to Gailani, the "black list" is "a list of individuals and businesses that are said to have defaulted on loans or other obligations to Saudi banks, or to be associated with persons or businesses who have defaulted under such loans or obligations." Gailani alleged that by placing his name on the list, Riyad not only destroyed the value of the accounts receivable collateral used to secure the line of credit, but Riyad also "caused permanent and irreparable injury to Al Gailani for which all actual damages may be recovered." Gailani also alleged a cause of action for "Business Libel and Slander" against Riyad. Riyad responded to the counterclaims on January 25, 1999 by filing a motion to strike. In the motion to strike, Riyad argued that:

> [t]o the extent any arguably valid counterclaims existed, the counterclaims were compulsory and had to be filed prior to this Court's ruling on the interlocutory summary judgments.... Because this Court has already ruled on these issues and because the counterclaims are merely another dilatory tactic, the counterclaims should be stricken, and the judgment against Gailani should proceed and be made final.

Riyad's motion to strike was granted on February 19, 1999, and a final judgment was entered against Adel and Gailani for $1,908,309.51 plus interest and attorney's fees. Adel and Gailani now bring this appeal.

## II. DISCUSSION

In Issue No. One, Appellants argue that summary judgment was erroneous because there are fact issues as to whether Appellee acted in a commercially reasonable manner once it undertook to collect the accounts receivable from PanAmerican's account debtors. We begin with a discussion of the appropriate standard of review.

■ The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Cortez v. Liberty Mut. Fire Ins. Co.,* 885 S.W.2d 466, 469 (Tex.App.—El Paso 1994, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no

genuine issue of material fact as to one or more elements of the movant's cause or claim. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

■ In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *See Nixon,* 690 S.W.2d at 548–49; *DeLuna v. Guynes Printing Co.,* 884 S.W.2d 206, 208 (Tex.App.—El Paso 1994, writ denied). Where the defendants are the movants and they submit summary evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *See Perez,* 819 S.W.2d at 471; *Bradley v. Quality Serv. Tank Lines,* 659 S.W.2d 33, 34 (Tex. 1983); *Cortez,* 885 S.W.2d at 469. Furthermore, when a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Rogers v. Ricane Enter. Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

Appellants argue that there are fact issues with respect to whether Appellee acted commercially reasonably under the Uniform Commercial Code Section 9.502. Specifically, Appellants maintain that Appellee acted unreasonably because "Riyad Bank filed no lawsuit to collect [the Bandariyah account] and undertook no serious negotiations, but instead acted to damage and even destroy Bandariyah .... by placing Bandariyah on a 'black list' ... causing Bandariyah to lose access to banking services and thus destroying its ability to pay its substantial account." Although Appellants concede that Section 9.502 does not require a secured creditor, such as Riyad, to collect the accounts receivable, Appellants maintain that once any type of collection effort commences (such as placing an accounts receivable debtor's name on a

"black list"), then such efforts must conform to the commercially reasonable standard. Appellants further contend that if the Section 9.502's commercially reasonable standard is not met, then "[p]ursuant to UCC § 9.507(a), the court may award damages (which would be set off against the debt) to the extent of 'any loss caused by a failure to comply' with the requirement of this subchapter of the Code." We must determine whether the sections cited by Appellants apply in this case, and, if so, whether there are fact issues pertaining to the reasonableness of Appellee's actions so as to preclude summary judgment.

Section 9.502 of the Business and Commerce Code states:

(a) When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under Section 9.306

(b) A secured party who by agreement is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor and *who undertakes to collect from the account debtors or obligors must proceed in a commercially reasonable manner* and may deduct his reasonable expenses of realization from the collections. If the security agreement secures an indebtedness, the secured party must account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency. But, if the underlying transaction was a sale of accounts or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.

Tex. Bus. & Com.Code Ann. § 9.502 (Vernon 1991) (emphasis added).

Appellants argue that summary judgment was erroneous because Appellee's ac-

tions invoked Section 9.502, and there are fact issues pertaining to whether Appellee proceeded in a commercially reasonable manner under that section. Specifically, Appellants argue that "placing the name of the account debtor on an official "black list," is an undertaking " 'to collect from the account debtor' " within the meaning of UCC § 9.502(b)." Appellee counters by arguing that "Appellants' unsupported contention that placing Bandariyah on an alleged 'black list' constitutes a collection under UCC § 9.502 is without merit."

█ We note that case law interpreting the provisions of Section 9.502(b) is scarce. Indeed, the issue of whether a secured party invokes the protective features of Section 9.502 by placing the names of account debtors on a foreign country's "black list" in order to, as Appellants imply, force payments of debts is an issue of first impression. Both parties in this case, as well as this court, agree that a secured party does *not* have to act commercially reasonable unless such party attempts to collect from the account debtors. The Texas Supreme Court confirmed this rule of law in *Cullen Frost Bank v. Dallas Sportswear Co.*, 730 S.W.2d 668, 669 (Tex.1987), where it concluded that a secured party is not governed by the *commercially reasonable* requirement of Section 9.502 unless "the secured party attempts to collect directly from 'an account debtor or the obligor on an instrument'." (quoting TEX. BUS. & COM. CODE ANN. § 9.502 (Vernon 1991)). In that case, however, it was not necessary for the court to determine what constitutes an "attempt to collect."

█ Appellants' summary judgment evidence of such collection efforts include the sworn affidavit testimony of Gailani, who stated:

From my involvement with Bandariyah International and with this particular case, I know that Riyad Bank did not make a serious and sincere effort to collect on the account owed by that company. Bandariyah International explained to Riyad Bank that it had financial and cash flow problems, but in an attempt to cooperate with the Bank made a best effort proposal to pay the balance based on a down payment and regular monthly payments after that. The proposal stated that the amount of these payments will be increased as and when the company's financial situation improved. Instead of working with the company on the basis of that initial proposal, Riyad Bank has submitted the name of Bandariyah, along with my own name and that of other principals, for inclusion on a black list maintained by the Saudi Arabian Monetary Agency. Inclusion on the list means that the listed parties may no longer obtain banking services in Saudi Arabia. This made it extraordinarily difficult for Bandariyah to operate, let alone to repay its account.[2]

Because all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor, we believe that Appellants' argument that Appellee attempted to collect the debt from the account debtor by placing its name on a "black list" to somehow

**2.** During oral arguments, Appellee objected to the affidavit testimony based on the assertion that it was "self serving." Tex.R. Civ. P. 166a(c), however, makes it clear that "[a] summary judgment may be based on uncontroverted testimonial evidence of an interested witness ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." The affidavit testimony offered to defeat summary judgment states clearly, positively and directly that Appellee placed the account debtor's name on a black list. This testimony could have been controverted with evidence suggesting either that the black list does not exist, or that the list does not contain the account debtor's name, etc. Therefore, the affidavit constitutes valid summary judgment evidence. Furthermore, even if the affidavit testimony did not meet the standards of Rule 166a(c), Appellee has waived this argument because no objection was made to the trial court.

coerce payment raises a fact question as to whether this was done in an attempt to collect payment.[3] We now proceed to Appellants' next contention—that posting the names of the account debtor and Appellants on a black list raises a fact issue pertaining to the commercially reasonable requirement.

■ Appellants argue that the effect of placing the account debtor's name and Appellants' names on the Saudi Arabian black list was to destroy any confidence a potential bidder may have in either the account debtor's or Appellants' ability to repay the financial obligation. Therefore, Appellants conclude, Appellee acted commercially unreasonably. In support of this argument, Appellants direct our attention to the official comments following Section 9.502, where it is stated:

> In one form of accounts receivable financing, which is found in the 'factoring" arrangement which are common in the textile industry, the assignee assumes the credit risk that is, he buys the account under an agreement which does not provide for recourse or charge-back against the assignor in the event the account proves uncollectible. Under such an arrangement, neither the debtor nor his creditors have any legitimate concern with the disposition which the assignee makes of the accounts. Under another form of accounts receivable financing, however, the assignee does not assume the credit risk and retains a right of full or limited recourse or charge-back for uncollectible accounts. In such a case both debtor and creditors have a right that the assignee not dump the accounts, if the result will be to increase a possible deficiency claim or to reduce a possible surplus.

TEX. BUS. & COM.CODE ANN. § 9.502 cmt. 2 (Vernon 1991). With this, Appellants urge that when the terms of the underlying

security agreement permit the assignee to charge back against the assignor for any deficiencies (such as in this case), then such assignee must be careful to not take any steps that may render the accounts receivable less valuable. Appellants maintain that "[t]o hold otherwise would allow the creditor to take over collection of an account through extrajudicial means, potentially destroying the value of the collateral, but nevertheless preserving its full right of recourse. This would clearly be inconsistent with the purposes of section 9.502(b)." We agree. Appellants' contention that the effect of placing the assignors' and the account debtor's name on a black list was to decrease the value of the accounts raises a fact issue as to whether Appellee acted commercially reasonably under Section 9.502. Because there are fact issues as to (1) whether the Appellee's actions invoked the commercially reasonable standard, and (2) whether Appellee acted commercially reasonably, summary judgment was erroneous. We now turn to Appellant Gialani's argument that the trial court erred when it dismissed their counterclaims against Appellee.

The trial court entered its order granting Riyad's motion to strike Appellant Gailani's counterclaim on January 25, 1999. In its order, the court stated: "The Court finds that the counterclaims filed by Tawfic Al Gailani ("Gailani") are untimely and barred. It is, therefore, ORDERED, ADJUDGED, AND DECREED that all counterclaims filed by Counter–Plaintiff Tawfic Al Gailani against Counter–Defendant Riyad Bank be stricken and dismissed with prejudice to the refiling of the same." Appellant Gialani argues that the trial court erred when it dismissed his counterclaim against Appellee because his claim did not, as the trial court determined, have to be filed prior to the interlocutory summary judgment order. Appellant argues that

---

**3.** Appellants have not made the argument that the insincere *negotiations* constitute an attempt to collect the debt. Rather, as proof that Appellee attempted to collect the debt, Appellants rely entirely upon their allegation that Appellee put the account debtor's name on a black list.

his counterclaim was not compulsory because it "arises out of the conduct of Riyad Bank in the collection of its alleged debt, not out of the conduct of the parties in connection with the transactions that gave rise to the alleged debt."

■ Because we have determined that summary judgment was erroneously entered in favor of Appellee, Appellant's counterclaim was not barred by the compulsory counterclaim rule. We reverse the judgment of the trial court and remand this case for further proceedings not inconsistent with this opinion.