**ENDICOTT JOHNSON CORPORATION,**
Plaintiff and Appellant,

v.

**C. M. GOLDE, d/b/a Family Clothing &**
**Shoes, Defendant and Respondent.**

**Civ. No. 8728.**

Supreme Court of North Dakota.

Oct. 4, 1971.

doing business as Family Clothing & Shoes in Mandan, North Dakota, for footwear ordered from Endicott Johnson Corporation [hereinafter Endicott], a shoe manufacturer and wholesaler, with its home office located in St. Louis, Missouri. Endicott alleges that Golde ordered merchandise from it and that Endicott furnished Golde with specified quantities of footwear and that Golde refuses to pay for such footwear. Golde admits that he ordered and received the footwear, but alleges that some of the footwear was not of good and serviceable quality, as had been represented by Endicott. Golde further alleges that he returned the defective merchandise but that Endicott refused to accept it. Golde claims that he is entitled to a credit for such returned merchandise. Golde has also counterclaimed for damages to his business reputation resulting from the sale of the allegedly defective merchandise.

Endicott, at the commencement of the trial, called Golde as its first witness. When the trial judge sustained objections to Endicott's questioning of Golde, Golde was excused as a witness and Endicott then attempted to introduce certain exhibits through its representative, Mr. William Wilmot. When the trial judge refused to admit these exhibits, Nos. 1, 2 and 3, in evidence, Endicott rested. Golde then moved for a dismissal of the action, and his motion was granted. Endicott has appealed and demanded a trial de novo.

William R. Mills, Bismarck, for plaintiff and appellant.

William G. Engelter, Mandan, for defendant and respondent.

PAULSON, Judge.

This case involves an appeal by Endicott Johnson from a judgment of dismissal by the District Court of Burleigh County.

The controversy in this case concerns the question of nonpayment by the defendant, C. M. Golde [hereinafter Golde],

Endicott contends that it was prejudicial error for the trial court to sustain the objections by Golde's attorney to the following questions propounded to Golde on cross-examination:

"Q  All right. Now, how many dollars worth of shoes did you receive from Endicott Johnson?

"Q  How many dollars worth of shoes did you order from Endicott?

"Q  What did you agree to pay for the shoes?

"Q Where are those records of what you received?"

Golde's attorney objected to each of the above questions on the ground that Endicott was trying to prove its case through the cross-examination of Golde. We agree with Endicott that the trial court did commit prejudicial error.

Endicott called Golde as a witness, pursuant to Rule 43(b) of the North Dakota Rules of Civil Procedure, the pertinent part of which reads as follows:

"A party may call an adverse party * * * and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party * * *."

Golde argues that the answers which Endicott was trying to elicit from Golde would have constituted the main part of Endicott's proof of its case and that the records of Endicott were the best evidence with which to establish this proof. We cannot agree with Golde's contention, in view of the purpose of Rule 43(b), N.D.R.Civ.P., which this court has previously stated to be:

" * * * to permit the production in each case of all pertinent and relevant evidence that is available from the parties to the action." [Iverson v. Lancaster, 158 N.W.2d 507, 520 (N.D.1968), citing State ex rel. Miles v. Brainin, 224 Md. 156, 167 A.2d 117, 119, 88 A.L.R.2d 1178 (1961).]

The purpose of Rule 43(b), N.D.R.Civ.P., is to enable a litigant to call his adversary without making him his own witness and elicit from him, if possible, material facts within his knowledge and to do away with a technical rule of evidence and facilitate getting at the facts in a particular case, so that the case might be tried on the merits.

Rule 1, N.D.R.Civ.P., provides that:

"These rules * * * shall be construed to secure the just, speedy, and inexpensive determination of every action."

On the particular subject of Rule 43(b), N.D.R.Civ.P., this Court has previously stated:

"Rule 43(b) liberalizes the old practice of calling an adverse party for cross-examination. When the adverse party is called, the party calling him may ask him leading questions and may contradict him and impeach him on material matters as fully as if the witness had originally been called by his own counsel." Lindsay v. Teamsters Union, Local No. 74, 97 N.W.2d 686, 694 (N.D.1959).

In Iverson v. Lancaster, *supra*, 158 N.W.2d at 521, this Court cited with approval the case of Oleksiw v. Weidener, 2 Ohio St. 2d 147, 207 N.E.2d 375, 377 (1965), in which case the Ohio Supreme Court stated:

"A civil defendant has no protection against subjecting himself to liability. If his testimony will provide facts which will aid the court in arriving at a just decision, he has [a] duty to testify. Any loss to the sporting aspect of adversary proceedings would be outweighed by the benefit to the judicial system."

While it would be more "sporting" in the case at bar to require Endicott to prove its case by calling "the custodian" (§ 31–08–01, N.D.C.C.) of its records from St. Louis as a witness, we do not believe that this is the construction to be given Rule 43(b), N.D.R.Civ.P. This rule is designed to permit a party to prove the facts in a case in the most readily available manner. Accordingly, we hold that Endicott should have been allowed to prove its case through testimony elicited from Golde, the adverse party.

Endicott also contends that it was error for the trial court to refuse to admit into evidence Endicott's Exhibits 1, 2, and 3. We agree with this contention as to parts of Exhibit 1 as well as all of Exhibit 2. Endicott attempted to introduce its exhibits under § 31–08–01, N.D.C.C. (Business Records as Evidence Act), by calling as a

witness Mr. William Wilmot, the company's only North Dakota representative. Section 31–08–01, N.D.C.C. provides:

"Admissibility in evidence of business records—Term 'business' defined.—A record of an act, condition, or event shall be competent evidence, in so far as relevant, if:

"1. The custodian or other qualified witness testifies to its identity and the mode of its preparation;

"2. It was made in the regular course of business, at or near the time of the act, condition, or event; and

"3. The sources of information and the method and time of preparation, in the opinion of the court, were such as to justify its admission.

"For the purpose of this section, the term 'business' shall include every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not."

The trial court refused to admit Exhibits 1, 2, and 3 in evidence for the reasons that the court believed that Wilmot was not the "custodian" of the records, and because the court believed that the original documents would be the best evidence. The trial court did not consider the language "or other qualified witness", as contained in § 31–08–01, N.D.C.C.

Endicott's Exhibit 1 consists of photostatic copies of orders placed with Endicott by Golde. Three of the orders were compiled by Wilmot in his own handwriting. The other orders were sent directly to Endicott by Golde. Wilmot testified that he had never seen the originals of the orders which were forwarded by Golde, but the orders accepted by Endicott indicate that the sales were credited to Wilmot. Wilmot testified that photostatic copies of all of the orders were furnished to him by Endicott's St. Louis office some time prior to the trial.

Endicott's Exhibit 2 consists of photostatic copies of invoices of shipments sent to Golde. Wilmot testified that the copies offered as exhibits were furnished to him by Endicott's St. Louis office and that they were identical to duplicates which were furnished him at the time of each shipment and which Wilmot had destroyed prior to the commencement of litigation in this case.

Endicott's Exhibit 3 is a photostatic copy of a condensed statement of the invoices of merchandise which was shipped to Golde. Wilmot testified that the copy offered in evidence was furnished him by the St. Louis office of Endicott.

The record reveals that the exhibits offered by Endicott were photostatic copies rather than originals. Since the trial court, in part, based its decision to exclude Exhibits 1, 2, and 3 on the fact that they were not originals, this court will examine this aspect of the case. The applicable statute, § 31–08–01.1, N.D.C.C., provides:

"Photographic copies of business and public records admissible in evidence.— If any business, institution, member of a profession or calling, or any department or agency of government, in the regular course of business or activity has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of the same to be recorded, copied or reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic, or other process which accurately reproduced or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is required by law. Such reproduction, when satisfactorily identified, is as admissible in evidence as the original itself in any judicial or administrative proceeding whether the original is in existence or not and an enlargement or facsimile of

such reproduction is likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement of facsimile, does not preclude admission of the original."

The first sentence of § 31–08–01.1 N.D.C.C., makes provision for allowing companies whose original records are voluminous to copy these records, reduce them for more efficient storage, and destroy the originals. Although the record does not reveal whether the originals are still in existence in this case, this should not preclude the admission of copies, since the second sentence of § 31–08–01.1, N.D.C.C., recognizes that copies can be admitted even though the originals are still in existence. The focal point to consider is whether the reproduction is satisfactorily identified. In this case the Court is of the opinion that the orders personally solicited by Wilmot (part of Exhibit 1) were satisfactorily identified, since they were in his own handwriting and he testified as to their identity and correctness. The Court is also of the opinion that Exhibit 2 was satisfactorily identified, since Wilmot testified that he had received duplicates of all of the invoices sent to Golde and that the copies offered were identical to the duplicates he received. As to the orders sent in directly by Golde (the balance of Exhibit 1) and as to Exhibit 3, the Court cannot say that they were satisfactorily identified.

Having determined that the orders taken by Wilmot (part of Exhibit 1) and Exhibit 2 were satisfactorily identified so as to permit the use of photostatic copies thereof rather than the originals, the question that still confronts us is whether Wilmot was a "qualified witness" so as to permit the introduction of these exhibits under § 31–08–01, N.D.C.C. We turn now to that question.

Considering first the orders which were prepared by Wilmot, the court finds that Wilmot was a "qualified witness" within the purview of the statute to testify as to the identity and mode of preparation of these orders. Accordingly we hold that the orders taken by Wilmot should have been admitted in evidence.

The next issue is whether Wilmot was a "qualified witness" as to Exhibit 2. He has been an Endicott employee for 16 years and has been an Endicott company representative in North Dakota during the period of time that Golde has been engaged in business in Mandan. Wilmot testified that Endicott regularly furnished him with duplicate invoices for all merchandise shipped to customers in his territory. Wilmot also testified that he had received duplicates of the invoices in question and that the copies offered as evidence were identical to the duplicates he received. While Wilmot does not have personal knowledge of the actual, physical operation of the computer system by which Endicott's invoices are prepared, he is generally familiar with the method which Endicott employed in processing orders placed with it. Merrick v. United States Rubber Co., 7 Ariz.App. 433, 440 P.2d 314, 316 (1968). Wilmot personally knows the people in Endicott's St. Louis office who initially received the orders; that the orders are processed by these people; and that the invoices are printed out by computer. He knows that Endicott uses the invoices as a record of the merchandise which it ships to customers in his territory.

Golde has stressed the point that Wilmot is not employed in Endicott's St. Louis office and that Wilmot is not an officer, accountant, superintendent, or secretary of the company. We do not believe that § 31–08–01, N.D.C.C., limits a "qualified witness" to one who is employed in the home office of a company or who is an officer, accountant, superintendent, or secretary of the company. The purpose of the enactment of § 31–08–01, N.D.C.C., was to enlarge the operation of the business records exception to the hearsay evidence rule and § 31–08–01 should be liberally

construed to that end. J. R. Watkins Company v. Vangen, 116 N.W.2d 641, ¶ 8 of syllabus (N.D.1962). See also Interstate Collection Agency, Inc. v. Kuntz, 181 N. W.2d 234, 240–241 (N.D.1970).

We do not believe that a liberal construction of § 31–08–01, N.D.C.C., would require Endicott to introduce its invoices only through an officer from its St. Louis office. The court is not unaware of the complexities of modern businesses and of the fact that a foreign corporation would be hindered in carrying on its business in North Dakota if it were required to send employees from its home office to North Dakota whenever it is compelled to collect legitimate claims through legal process. Because of the volume of its business, Endicott must of necessity keep records of its accounts receivable. Under such conditions there is a presumption that the records Endicott keeps are accurate. § 31–11–03(19), (20), N.D.C.C. On this subject it is stated in 32 C.J.S. Evidence § 682(1), pp. 895–897:

"The purpose of these statutes was to broaden the scope of admissibility of records made in the regular course of business, to facilitate the admission of records which experience has shown to be quite trustworthy, to make it unnecessary to call as witnesses the parties who made the business entries, or who participated in doing the work reported, and to bring the realities of business and professional practice into the courtroom in usable form. Such statutes rely on the trustworthiness of records as routine reflections of the day to day operations of a business, it being the interest of the entrant to have his records truthful and accurate so that they may be relied on in the conduct of the business. Such statutes are to be liberally construed to facilitate the effectuation of their purpose."

Where these conditions exist, the records should be admitted when the court is satis-fied that exhibits offered are in fact the records of the company and that they are dependable and worthy of confidence.

"The basic theory of the uniform law is that records which are properly shown to have been kept as required normally possess a circumstantial probability of trustworthiness, and therefore ought to be received in evidence unless the trial court, after examining them and hearing the manner of their preparation explained, entertains serious doubt as to whether they are dependable or worthy of confidence." 30 Am.Jur.2d, Evidence § 933, p. 53 (1967).

In the instant case the trial court did not base its ruling to exclude the exhibits on any doubt as to their trustworthiness or dependability, but excluded them rather on the basis that Wilmot was not the "custodian" of the records.

■ After reviewing the record, we conclude that Wilmot was a "qualified witness" and that the invoices should have been admitted in evidence. Even though the records are admitted, they are not conclusive and the weight to be given them is still a question to be determined by the trier of fact. This court adhered to this rule in Seco, Inc. v. Gauvey Rig & Trucking Co., 166 N.W.2d 397, 401 (N.D.1969), when it stated:

"Even though the business records are admitted more readily under this Act, the weight to be accorded the records is still a matter to be determined by the trier of the facts, be that a jury or, as in the instant case, a judge."

For reasons stated in the opinion, the judgment of dismissal is reversed and a new trial granted.

STRUTZ, C. J., and ERICKSTAD, TEIGEN, and KNUDSON, JJ., concur.