**FEDERAL DEPOSIT INSURANCE CORP., In Its Corporate Capacity, Plaintiff-Appellee,**

v.

**FORT WORTH AVIATION, John Cary & Eleanor Cary, Defendants-Appellants.**

No. 86–1104.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1986.

Richard M. Plato, Yocel Alonso, Houston, Tex., for defendants-appellants.

M.O. Anderson, Jr., Beth A. Kramer, F.D.I.C., Legal Div., Midland, Tex., for plaintiff-appellee.

Before GOLDBERG, REAVLEY and GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge:

The district court held appellants, John and Eleanor Cary, personally liable as guarantors on notes executed by Fort Worth Aviation to First National Bank of Midland. In doing so, the court rejected appellants' interpretation of a paragraph in the guaranty contract and also their contention that certain accounts receivable securing the notes were not treated in a commercially reasonable manner. We affirm.

### Facts

John and Eleanor Cary were president and secretary/treasurer of Fort Worth Aviation (FWA), an airplane leasing company. Their company took a series of loans from First National Bank of Midland (FNB), totalling over $3 million. The loans were represented by promissory notes and secured by several aircraft and three aircraft leases. In addition, the Carys both signed a guaranty contract, subjecting themselves to liability for any amount FWA owed to FNB.

FNB subsequently became insolvent and its notes are now held by the Federal Deposit Insurance Corporation (FDIC). FDIC brought the present action to collect on FWA's notes and the Carys' guaranties. After a bench trial, the district court found the notes to be in default and held the Carys personally liable for FWA's debts by virtue of the guaranty contract. On appeal, the Carys contend that a condition precedent to their liability was not satisfied and that FDIC did not act in a commercially reasonable manner in regard to the aircraft leases securing the loans.

### Discussion

1. *Guaranty Contract*

The Carys argue that the guaranty contract requires that a transferee or assignee of the notes—in this case, FDIC—pay face value of the notes as a condition precedent to enforcing the guaranty. They base this argument on the following paragraph in the contract:

> This guaranty shall inure to the benefit of the transferee, assignee, or holder of the principal debt; however, all indebtedness to the Creditor shall first be paid in full, before the assignee of any debt guaranteed shall receive any benefit of this contract of guaranty.

This court has recently considered and rejected this precise contention in a case similar to this one arising out of the insolvency of FNB and FDIC's attempts to collect debts it assumed from FNB. In *Federal Deposit Insurance Corp. v. Matheson*, 804 F.2d 1382 (5th Cir.1986), we held that language identical to that in the paragraph quoted above does not require the assignee to pay face value as a prerequisite to suing the guarantors. Instead, the clause requires only that all indebtedness of the debtor owing to FNB be paid before the assignee would have the benefit of the guaranty. As in *Matheson*, this condition has been satisfied in this case, for all of FNB's debts have been transferred to FDIC and FWA owes nothing to FNB. The district court correctly ruled that the Carys are liable under their guaranty contract.

2. *Disposition of the aircraft leases*

The Carys and FWA also argue that their indebtedness should be reduced because of FDIC's failure to pursue collection of rent payments due under the three aircraft leases FNB took as security for the notes. They contend that FDIC had a duty to liquidate these accounts receivable in a commercially reasonable manner. We agree with the district court that FDIC had no such obligation in this case.

■ The Carys and FWA assert that FDIC's obligation to liquidate the accounts receivable arises out of section 9.502(b) of the Texas enactment of the Uniform Commercial Code.[1] Tex.Bus. & Com.Code Ann. § 9.502(b) (Vernon Supp.1986). That section, however, does not impose such an obligation. It merely provides that a secured party "who undertakes to collect from account debtors" must do so in a commercially reasonable manner. It nowhere states that a secured party must collect from account debtors. Indeed, to hold that a secured party who has taken a

security interest in accounts receivable must first collect on those accounts would be inconsistent with the settled rule that "the creditor can ignore his security interest and obtain a judgment on the underlying obligation and proceed by execution and levy." J. White & R. Summers, Uniform Commercial Code § 26–4, at 1091 (2d ed. 1980); *see also* Tex.Bus. & Com.Code Ann. § 9.501(a) (Vernon Supp.1986) (a secured party "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure").

■ The purpose of section 9.502(b)'s requirement of commercial reasonableness is to protect the debtor from an avoidable deficiency judgment or the squandering of a possible surplus through the secured party's inaction. *See* Tex.Bus. & Com.Code Ann. § 9.502 comment 2 (Vernon Supp. 1986). The requirement thus comes into play when the secured party takes possession and control of the accounts, preventing the debtor from acting on the accounts himself, or when the secured party undertakes collection so as to entitle the debtor to rely on the former to protect the accounts. In this case, however, the Carys and FWA have presented no evidence that FDIC took possession and control of the leases. Further, it is undisputed that FDIC did nothing to collect on the leases. The parties stipulated before trial that FDIC "had not pursued collection of any receivables due" FWA under the lease agreements.

AFFIRMED.

---

1. The Carys and FWA do not contend, as they could not, that FDIC was obligated to pursue the accounts receivable by agreement of the parties. Both the lease assignments and the guaranty agreement on which the Carys are liable specifically absolve FDIC of any such responsibility. Thus, in the absence of a nonwaivable statutory obligation, FDIC cannot be said to have been required to proceed against the security as a prerequisite to collecting on the notes.