RIYAD BANK, Houston
Agency, Petitioner,

v.

Tawfic AL GAILANI and Abdallah
Adel, Respondents.

No. 00–0688.

Supreme Court of Texas.

Argued March 7, 2001.

Delivered Nov. 8, 2001.

**354**

Wade Turner, Patricia S. Williams, Janet E. Militello, Locke Liddell & Sapp, Houston, for petitioner.

Robert Hohenberger, H. Miles Cohn, Sheiness, Scott, Grossman & Cohn, L.L.P., Houston, for respondents.

Chief Justice PHILLIPS delivered the opinion of the Court.

This case involves the legality of a bank's actions in foreclosing on accounts receivable a debtor pledged as collateral. The trial court concluded that the bank neither used commercially unreasonable collection methods under section 9.502 of the Uniform Commercial Code nor conducted an improper foreclosure sale under section 9.504. *See* TEX. BUS. & COM.CODE §§ 9.502, 9.504.[1] The court of appeals, concluding that the debtors raised fact questions about the collection attempt under section 9.502, reversed the trial court's judgment. 22 S.W.3d 560. The court did not reach the debtors' claims about the impropriety of the foreclosure sale under section 9.504. Contrary to the court of appeals, we conclude that section 9.502 does not apply in this case. But because we conclude that section 9.504 does apply, we remand to the court of appeals to decide if the debtors raised fact questions on whether the creditor complied with that section. We therefore reverse the judgment of the court of appeals and remand to that court for further proceedings.

I

In September 1993, Riyad Bank, Houston Agency extended a $2 million line of credit to PanAmerican Supply Company. As collateral, PanAmerican gave Riyad a first priority security interest in all its inventory, accounts receivable, and equipment. PanAmerican also signed a promissory note for the loan amount. Tawfic Al Gailani, Chief Executive Officer of PanAmerican in Houston, Abdallah Adel, Vice–President and Chief Operating Officer, and Mohammad Saed Al Ghamdi, a nonofficer from Saudi Arabia, guaranteed the loan and co-signed the promissory note.

In July 1995, Riyad demanded that PanAmerican and the three co-signers pay the note. When Riyad did not receive payment, it sold the pledged accounts receivable at a public foreclosure sale in November 1995. In addition to notifying PanAmerican and the three co-signers, Riyad also posted notice of the sale at the Harris County Courthouse and published two notices in the *Houston Chronicle*, the county's largest newspaper. Neither PanAmerican nor the co-signers attended the sale. Riyad, the sole bidder, bought the accounts for $10. After applying all credits, Riyad claimed that $1,908,309.51 was still due.

In March 1996, Riyad sued PanAmerican and the three co-signers to recover the

---

1. Substantial revisions to Chapter 9 of the Texas Business and Commerce Code were made during the 76th Legislature. See Act of June 18, 1999, 76th Leg., R.S., Ch. 414, § 1.01, 1999 TEX. GEN. LAWS 2639–2736. These amendments took effect on July 1, 2001. *Id.* at 2750. All references to the Business and Commerce Code in this opinion are to the law as it existed before these amendments.

deficiency. On Riyad's motions, the trial court severed the claims against Al Ghamdi and PanAmerican. Riyad then moved for summary judgment against Adel. Adel responded that Riyad was not entitled to summary judgment because it failed to establish commercial reasonableness as a matter of law under sections 9.502 and 9.504.

Section 9.502(a) provides that "on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payments to him ... and also to take control of any proceeds to which he is entitled...." Section 9.502(b) specifies that a secured party "who undertakes to collect from the account debtors or obligors must proceed in a commercially reasonable manner."

Relying on Al Gailani's affidavit, Adel contended that Riyad engaged in a commercially unreasonable "undertak[ing] to collect from the account debtor" under section 9.502. Adel stated that Riyad did so by reporting him and Bandariyah International ("Bandariyah"), a PanAmerican subsidiary which was also PanAmerican's largest account debtor, to the Saudi Arabian Monetary Agency ("SAMA"). The SAMA, he says, maintains a "blacklist" of individuals and businesses that have defaulted on loans or other obligations to Saudi banks. According to Al Gailani, businesses or individuals that SAMA lists cannot obtain banking services or otherwise participate in the Saudi business community.

Section 9.504(a) provides a secured party with another option after default. The secured party "may sell, lease or otherwise dispose of all of the collateral in its then condition or following any commercially reasonable preparation or processing." Under section 9.504(c), "[s]ale or other disposition may be as a unit or in parcels and at any time and place and on any terms

but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Adel alleged that Riyad did not conduct the public foreclosure sale in a "commercially reasonable" manner under section 9.504, because it "provided little notice and only minimal advertising and made no attempt to reach purchasers who might have a genuine interest in the collateral."

The court granted Riyad's summary judgment motion against Adel and later denied Adel's motion for reconsideration. Meanwhile, Riyad had also moved for summary judgment against Al Gailani. Al Gailani responded to the motion and, relying on his own affidavit, also contended that he raised genuine issues of material fact under both sections 9.504 and 9.502. The trial court granted Riyad's summary judgment against Al Gailani, which, like the earlier summary judgment against Adel, was interlocutory.

Al Gailani then filed a counterclaim against Riyad for interference with business relations and business libel and slander. Al Gailani based this claim on Riyad's actions in reporting him and Bandariyah to SAMA. He claimed that Riyad's actions destroyed the value of those accounts as collateral for the PanAmerican loan. Riyad moved for summary judgment on the counterclaim and later filed a motion to strike the counterclaim. The court granted the motion to strike, concluding that because Al Gailani's counterclaim arose out of the same conduct at issue in Riyad's summary judgment, it was compulsory and should have been filed before the court ruled on the earlier summary judgment motion. The court rendered final judgment in March 1999, awarding Riyad $1,908,309.51, together with pre- and post-judgment interest and attorneys' fees.

■ Al Gailani and Adel appealed, contending that they raised genuine fact issues under sections 9.502, 9.504 and 9.505. TEX. BUS. & COM.CODE §§ 9.502, 9.504, 9.505. The court of appeals reversed both summary judgments, determining that material fact issues existed under section 9.502. The court concluded that Riyad's conduct in forwarding names to SAMA "to somehow coerce payment raises a fact question about whether this was done in an attempt to collect payment," and also raises a fact question about whether it was commercially reasonable. 22 S.W.3d at 564–65. The court also reversed the trial court's order granting Riyad's motion to strike and remanded Al Gailani's counterclaim for the trial court's consideration. *Id.* at 566. The court of appeals did not discuss the parties' arguments under section 9.504 or 9.505.[2]

## II

■ Riyad first contends that the defendants did not raise a fact issue about whether reporting Bandariyah to SAMA was an attempt to collect under section 9.502. That section applies when the secured party "undertakes to collect" the amount that the borrower owes by directing the borrower's debtors or obligors to make payment directly to the creditor or by taking control of proceeds. TEX. BUS. & COM.CODE § 9.502. Thus, in this case, section 9.502 would apply if Riyad attempted to recover PanAmerican's debts by collecting on the Bandariyah accounts that PanAmerican pledged as collateral. If the secured party exercises this option, it must proceed in a commercially reasonable manner. TEX. BUS. & COM.CODE § 9.502(b).

Riyad contends that it never attempted to collect on PanAmerican's debtors' accounts. The bank points out that the only summary judgment evidence on which the court of appeals relied, Al Gailani's affidavit, expressly states: "From my involvement with Bandariyah International and with this particular case, I know that *Riyad Bank did not make a serious or sincere effort to collect on the account* owed by [Bandariyah]" (emphasis added). Riyad further asserts that reporting to SAMA is analogous to credit reporting in this country, which is not an attempt to collect, reasonable or otherwise, quoting *Black's Law Dictionary* 263 (6th ed.1990) ("to collect a debt or claim" means "to obtain payment or liquidation of it *either by personal solicitation or legal proceedings* " (emphasis added by Riyad)).

Al Gailani and Adel respond that reporting to SAMA was a commercially unreasonable attempt to collect from the account debtors, as that term is used in section 9.502. It is far more drastic than credit reporting, they say, because unlike a credit report in the United States, this action makes it impossible for a company to operate in Saudi Arabia.

Although no Texas court has determined what constitutes an attempt to collect under section 9.502, the United States Court of Appeals for the Fifth Circuit, applying Texas law, has said that section 9.502's commercial reasonableness requirement is

**2.** Section 9.505 provides that under certain circumstances a secured party may elect to retain the collateral in satisfaction of the obligation. Al Gailani and Adel allege that Riyad destroyed the value of the collateral, and that this destruction created a fact issue about its intention to accept such collateral in discharge of the debt. Riyad responds that sections 9.504 and 9.505 are mutually exclusive. Because it foreclosed on the accounts and sold them under section 9.504, Riyad submits that section 9.505 simply does not apply. Further, Riyad argues that Al Gailani and Adel waived this argument because they did not present it to the trial court. Because we agree that the argument has been waived, we need not consider the merits of Al Gailani and Adel's claim under this section.

invoked either when the secured party takes possession and control of the accounts or when the debtor is justified in relying on the secured party to protect its accounts. *Federal Deposit Ins. Corp. v. Fort Worth Aviation*, 806 F.2d 575, 577 (5th Cir.1986). In *Fort Worth Aviation*, officers of an airplane leasing company obtained a $3 million loan by signing promissory notes, pledging several aircraft and three aircraft leases as collateral, and personally guaranteeing the loan. *Id.* at 576. FDIC brought an action to collect on notes and guaranties. The court rejected the borrowers' argument that their indebtedness should be reduced because FDIC failed to pursue collection of the aircraft lease payments in a commercially reasonable manner under section 9.502. After noting that FDIC had no obligation to pursue collection of the leases before suing on the notes and guaranties, the court said:

> The [commercial reasonableness] requirement thus comes into play when the secured party takes possession and control of the accounts, preventing the debtor from acting on the accounts himself, or when the secured party undertakes collection so as to entitle the debtor to rely on the former to protect the accounts.

*Id.* at 577. The court noted that the debtors presented no evidence that the FDIC took possession and control of the leases and that the parties stipulated that FDIC had not pursued collection. Therefore, it concluded that section 9.502 did not apply. *Id.*

Riyad contends, under the *Fort Worth Aviation* definition, that reporting Bandariyah to SAMA does not amount to "tak[ing] possession and control of the accounts." *Id.* The co-signers respond that Riyad's conduct meets the definition because the action "prevent[ed] [PanAmeri-

can] from acting on the accounts [it]self." *Id.* They do not suggest, however, that Riyad had any control over SAMA, an entirely unrelated agency. Thus, we conclude that Riyad, by reporting Bandariyah to SAMA, did not "tak[e] possession and control of the accounts." *Id.* If PanAmerican could not act on its own accounts, that was not because of Riyad's actions but, according to Al Gailani's own affidavit, because of the Saudi business community's reaction to the SAMA list.

Nor did Riyad's reporting Bandariyah to SAMA "entitle [PanAmerican] to rely on [Riyad] to protect the accounts." *Id.* Al Gailani's affidavit suggests only that reporting to SAMA made it "extraordinarily difficult for Bandariyah to operate, let alone to repay its account." Nowhere did Al Gailani state that Riyad's actions precluded PanAmerican from acting on the account or that PanAmerican was entitled to rely on Riyad to protect the accounts.

Al Gailani and Adel finally argue that PanAmerican lost the ability to act on these accounts after the foreclosure sale. While this is true, the loss of control in this instance was caused not by Riyad's collection attempts under section 9.502, but rather by Riyad's sale of the accounts under section 9.504. We conclude that Riyad conclusively proved that it did not "undertake[ ] to collect" from PanAmerican's account debtors by reporting to SAMA, and Adel and Al Gailani have not raised a fact issue to the contrary. Section 9.502 and its requirement that the secured party "proceed in a commercially reasonable manner" therefore does not apply. Tex. Bus. & Com.Code § 9.502(b).

### III

■ There remains the question whether Riyad conducted the public foreclosure sale in a commercially reasonable manner under section 9.504. The court of appeals

did not consider this alternative ground for reversing the trial court's summary judgment.

Riyad asserts that section 9.504's commercial reasonableness requirement does not apply to foreclosure on intangible collateral, such as accounts receivable, citing *Cullen Frost Bank v. Dallas Sportswear Co.*, 730 S.W.2d 668 (Tex.1987). *Cullen*, however, did not consider section 9.504's commercial reasonableness requirement and thus cannot be read as Riyad proposes.

In *Cullen*, the debtor defaulted on two notes. The bank threatened to foreclose its security interest in the debtor's accounts receivable if the debtor did not immediately begin depositing receipts from these accounts into a special account at the bank. The debtor complied with this demand, and the notes were eventually paid off from this account. The debtor then sued the bank, claiming both lack of notice and commercially unreasonable disposition of the collateral. The trial court granted summary judgment for the bank, but the court of appeals reversed and remanded, concluding that fact issues under section 9.504 on both the debtor's claims precluded summary judgment. We disagreed that the bank had to follow section 9.504 in disposing of the collateral because the debtor had already collected the accounts for the bank. *Id.* at 669–70. We concluded that the bank's use of the cash to pay off the debt was "within the bounds" of sections 9.306 and 9.502. *Id.* at 669. Moreover, we concluded that the requirements of notice and commercial reasonableness in section 9.502 were not implicated because the bank had not collected directly from the account debtors themselves. *Id.* at 669. We did not say, however, that section 9.504's commercial reasonableness requirement does not apply to foreclosure on intangible collateral, such as accounts receivable. Both section 9.502 and section 9.504 contain a commercial reasonableness component. Section 9.504 plainly provides that every aspect of the disposition of collateral be commercially reasonable. *See* Tex. Bus. & Com.Code § 9.504(c). Section 9.502 plainly requires that secured parties who collect from account debtors under certain circumstances must do so in a commercially reasonable manner. *See* Tex. Bus. & Com.Code § 9.502(b). *Cullen* did not touch on section 9.504, nor did it purport to apply the commercial reasonableness requirement of section 9.502.

█ Section 9.504 applies in this case because Riyad chose to sell PanAmerican's accounts receivable rather than collect them under section 9.502. Riyad had every right to proceed in this fashion. As the Fifth Circuit observed in *Fort Worth Aviation:*

> [The Code] nowhere states that a secured party must collect from account debtors. Indeed, to hold that a secured party who has taken a security interest in accounts receivable must first collect on those accounts would be inconsistent with the settled rule that "the creditor can ignore his security interest and obtain a judgment on the underlying obligation and proceed by execution and levy."

*Fort Worth Aviation*, 806 F.2d 575, 577 (5th Cir.1986) (quoting White & Summers, Uniform Commercial Code § 26–4, at 1091 (2d ed.1980)); *see* White & Summers, Uniform Commercial Code § 34–4, at 393 (4th ed.1995). When Riyad disposed of the pledged collateral in a foreclosure sale, it invoked its remedy under section 9.504.

Riyad claims, alternatively, that it met its summary judgment burden to establish as a matter of law that the foreclosure sale

was commercially reasonable.[3] The co-signers counter that the commercial reasonableness of a foreclosure sale is a question of fact that cannot be decided by summary judgment, citing *Gordon & Associates, Inc. v. Cullen Bank/Citywest, N.A.,* 880 S.W.2d 93 (Tex.App.—Corpus Christi 1994, no writ). In particular, they contend that Riyad's foreclosure sale was not commercially reasonable because the bank "provided little notice and only minimal advertising" and "purchased the accounts itself for a token bid of $10."

As we have noted, the court of appeals did not think section 9.504 applied here, and thus did not consider the commercial reasonableness requirement of that section. When the court of appeals does not consider issues properly preserved, we have the option of either examining the omitted issue or issues to determine whether any will support the court of appeals' judgment or remanding the issue to the court of appeals for it first to consider the omitted issue. *Stanglin v. Keda Dev. Corp.,* 713 S.W.2d 94, 95 (Tex.1986). In this instance, the court of appeals should have an opportunity to determine whether the debtors raised fact questions on the creditor's compliance with section 9.504.

We accordingly reverse the court of appeals' judgment and remand the cause for further proceedings in that court.

---

3. *See Greathouse v. Charter Nat'l Bank–Southwest,* 851 S.W.2d 173, 176–77 (Tex.1992) (creditor must prove that sale was commercially reasonable once debtor in deficiency suit raises issue by pleading it specifically or averring generally that all conditions prece-dent have been met); *Daniell v. Citizens Bank,* 754 S.W.2d 407, 410 (Tex.App.—Corpus Christi 1988, no writ) ("Whether collateral has been sold in a commercially reasonable manner is generally a question of fact.").