AL GAILANI, Tawfic and Adel, Abdallah, Appellants,

v.

RIYAD BANK, HOUSTON AGENCY, Appellee.

No. 08–99–00139–CV.

Court of Appeals of Texas, El Paso.

Dec. 29, 2003.

H. Miles Cohn, Sheiness, Scott, Grossman & Cohn, L.L.P., Robert Hohenberger, Houston, for Appellants.

Janet E. Militello, Locke, Liddell & Sapp L.L.P., Houston, for Appellee.

Before Panel No. 5 McCLURE, CHEW, and HILL, C.J. (Ret.), JJ., (HILL, C.J., (Ret.) sitting by assignment).

### OPINION ON REMAND

PER CURIAM.

Tawfic Al Gailani and Abdallah Adel appeal from a summary judgment on a note in favor of Riyad Bank, Houston Agency. In three issues, Appellants argue that the trial court erred in granting summary judgment for Riyad Bank and that the trial court erred in striking Al Gailani's counterclaim. We reverse the summary judgment and remand to the trial court for further proceedings.

This Court previously reversed summary judgment in favor of the Bank, hold-

ing that there is a fact issue as to whether the Bank's placement of Adel, Al Gailani, and Bandariyah, a subsidiary of PanAmerican Supply Company, all makers of the note, on a "black list" maintained by the Saudi Arabian Monetary Agency, was commercially reasonable as required by Section 9.502 of the Texas Business and Commerce Code. *Al Gailani,* 22 S.W.3d at 560, 565 (Tex.App.-El Paso 2000, *rev'd* at 61 S.W.3d 353 (Tex.2001)). We did not reach the issue as to whether the Bank's foreclosure sale of Appellants' intangible collateral, consisting of certain accounts receivable, was commercially reasonable as required by Section 9.504 of the Code. *Al Gailani,* 22 S.W.3d at 560. On appeal, the Texas Supreme Court reversed, holding that Section 9.502 did not apply because the Bank did not attempt to collect on the accounts. *Riyad Bank v. Al Gailani,* 61 S.W.3d 353, 357 (Tex.2001). The Court remanded this cause for our consideration of Appellants' claim that the trial court erred in granting the Bank's summary judgment because the Bank failed to prove as a matter of law that its foreclosure sale of the accounts receivable was commercially reasonable, as required by Section 9.504 of the Code. *Riyad Bank,* 61 S.W.3d at 353. TEX. BUS. & COM.CODE ANN. § 9.502 (Vernon Supp.2004).

Appellants contend in Issues Number One and Two that the trial court erred in granting summary judgment in favor of the Bank because there is a fact issue as to whether the Bank acted in a commercially reasonable manner in conducting its foreclosure sale and as to whether the summary judgment evidence establishes as a matter of law that the accounts receivable the Bank sold at the sale were worthless. In a summary judgment case, the issue on appeal is whether the movant met his or her summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled

to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 282 (Tex.1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Rhone–Poulenc,* 997 S.W.2d at 223; *Harwell v. State Farm Mutual Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin,* 589 S.W.2d at 678.

It is undisputed that the Bank was required to conduct its sale of Appellants' collateral in a commercially reasonable manner, in accordance with former Section 9.504 of the Texas Business and Commerce Code. In a non-substantive revision, this provision now appears in Section 9.610(b) of the Code. The parties agree that the former statute controls in this

case because the foreclosure sale occurred before the effective date of the revision. TEX. BUS. & COM.CODE ANN. § 9.610(b)(Vernon 2002).

 In a suit brought by a secured creditor to recover a deficiency following the sale of collateral, if a creditor pleads that all conditions precedent have been performed or have occurred, it is required to prove that its disposition of the collateral was commercially reasonable only if the debtor specifically denies it in his answer. *Greathouse v. Charter Nat'l Bank–Southwest*, 851 S.W.2d 173, 176–77 (Tex.1992).

The Bank did not allege that all conditions precedent had been performed or occurred, and the Appellants did not plead in their answers that the foreclosure was not conducted in a commercially reasonable manner. They did, however, in their responses to the Bank's motion for a partial summary judgment, urge that it be denied because the foreclosure sale was not conducted in a commercially reasonable manner. We hold that the Bank was required to prove that it conducted the sale of the accounts receivable in a commercially reasonable manner.

Whether collateral has been disposed of in a commercially reasonable manner is generally a question of fact. *Gordon & Assoc. v. Cullen Bank Citywest, N. A.*, 880 S.W.2d 93, 96 (Tex.App.-Corpus Christi 1994, no writ). The summary judgment evidence shows that the Bank mailed notice to the maker and guarantors fourteen days before the public sale, longer than the ten days required under the security agreement. It posted a copy of the notice of sale in the Harris County Courthouse and published two notices of the sale in the *Houston Chronicle* about ten days before the sale. The Bank purchased the accounts receivable, which had a face value in excess of $2 million, at the foreclosure sale for $10. Al Gailani, one of the Appellants and an experienced Saudi businessman, testified in his affidavit that no responsible bank or businessman would attempt to sell accounts or receivables owned by a Saudi company with minimal notice and posting at the Harris County Courthouse. According to Gailani, the most likely buyers for any such assets would be Saudi businesses and investors. He indicated that one can only reach that market by identifying such potential investors and providing them with notice and sufficient information to make an investment decision, as well as by advertising in newspapers and magazines that might be read by Saudi investors. We hold that the Bank has not proved as a matter of law that the sale was conducted in a commercially reasonable manner.

The Bank maintains that it proved as a matter of law that it conducted the sale in a commercially reasonable manner because it conducted the sale in accordance with the method of sale set forth in the security agreement and because the summary judgment evidence shows that the accounts receivable are worthless.

The only portion of the security agreement that refers to procedure in connection with the foreclosure sale of collateral is that portion setting forth the requirement of sending notice to the debtor at least 10 days before the time of the sale. The agreement also provides for how the notice is to be given, but is silent as to any of the other details of conducting a foreclosure sale. We do not agree with the Bank that the sale was commercially reasonable as a matter of law merely because it complied with the notice provision in the security agreement, because notice to the debtor and commercially reasonable publicity for the foreclosure sale are two separate issues. *See Ford & Vlahos v. ITT Commercial Finance Corp.*, 8 Cal.4th 1220, 36

Cal.Rptr.2d 464, 885 P.2d 877, 883 (Ca. 1994).

■ The Bank argues that the foreclosure sale was commercially reasonable as a matter of law because it was not required to give notice to potential Saudi Arabian investors because the loan was made in Texas and not in Saudi Arabia. There is summary judgment evidence indicating that no responsible bank would conduct the sale with only the notice given by the Bank, that a responsible bank would notify potential Saudi Arabian investors. Where, as here, the collateral is unique, the failure to publicize the foreclosure sale to those likely to be interested in the type of collateral involved constitutes evidence that the sale was not commercially reasonable. *See Villella Enters. v. Young,* 108 N.M. 33, 766 P.2d 293, 297 (1988); *In re Four Star Music Co.,* 2 B.R. 454, 462 (M.D.Tenn. 1979); *Associates Capital Services Corp. v. Riccardi,* 454 F.Supp. 832, 833–34 (R.I. Dist.1978). The Bank presents no authority in support of its argument that publicity need not be given to those potential purchasers merely because they are outside Texas, and we are not aware of any.

The Bank suggests that it established as a matter of law that the accounts receivable were worthless because of a finding by the bankruptcy trustee in the bankruptcy of PanAmerican Supply Company, in his notice of intention to abandon the same accounts receivable that were pledged as collateral on the note to the Bank, that the accounts had no or inconsequential value to the estate and that the cost of their liquidation would outweigh the benefit realized by the estate and creditors of the estate. In making that determination, the trustee was finding that the accounts were not of sufficient value to the estate to justify its cost of liquidation of the accounts. The trustee expressed no opinion as to the market value of the accounts receivable. We do not agree with the Bank that the trustee's determination establishes as a matter of law that the collateral has no market value.

Additionally, the Bank suggests that the accounts receivable were worthless as a matter of law because Appellants admit that Bandariyah, an affiliate of PanAmerican Supply Company, from whom most of the obligation in the accounts receivable was due, was in financial trouble; that PanAmerican Supply Company never collected on the account in order to pay its debt to the Bank; and that no one from PanAmerican Supply Company or Bandariyah participated in the foreclosure sale. Even if these facts should suggest that the accounts receivable might have no market value, we hold that they do not establish as a matter of law that the accounts receivable had no market value.

The Bank refers to a general statement in *Collier on Bankruptcy,* Section 101.32[4], that the value of accounts receivable depends upon the solvency of the obligors. While there is summary judgment evidence that Bandariyah was financially troubled, there is no summary judgment evidence that it was insolvent. The Bank suggests that the summary judgment evidence does not show that the Bandariyah account had value, but it was the Bank, not Appellants, that had the burden of proof with respect to the commercial reasonableness of the sale. *Collier on Bankruptcy,* Section 101.32[4], Lawrence P. King Ed., 15th Ed.1998.

The Bank also contends that the accounts were worthless because a fire had destroyed all the records associated with the accounts. There is summary judgment evidence that most, if not all, records of PanAmerican Supply were destroyed by fire. There is no summary judgment evidence that the records regarding the accounts receivable involved here have been

destroyed by fire. Further, there is summary judgment evidence, in the affidavit of Al Gailani, that Bandariyah International, the primary debtor of the accounts receivable, acknowledged the debt to the Bank and made a proposal to pay the Bank the balance due by means of a down payment and regular monthly payments. In view of that evidence, we hold that evidence that records supporting the account may or may not have been destroyed by fire does not establish as a matter of law that the account is worthless, because it would not be impossible to collect the debt without records in the event that the debtor acknowledges the debt.

In urging that it has proved the accounts worthless as a matter of law because most or all of the records were destroyed by fire, the Bank relies on the cases of *Endicott Johnson Corp. v. Golde*, 190 N.W.2d 752, 757 (N.D.1971) and *Medi–Cen Corp. of Maryland v. Birschbach*, 123 Md.App. 765, 720 A.2d 966, 971–74 (1998). In *Endicott*, the court held that the sponsor of a business record of a corporation doing business in North Dakota was not required to be an employee from the corporation's home office in another state because, due to the complexities of modern business, it would be hindered in carrying out its business in North Dakota if it were required to do so. *Endicott*, 190 N.W.2d at 756–57. The court did not hold that the absence of records established that accounts receivable are worthless as a matter of law. In *Medi–Cen Corp.*, the court held that it was error for the trial court to evaluate certain accounts receivable at face value where circumstances cast doubt on their collectibility. *Medi–Cen Corp.*, 720 A.2d at 973. In its discussion, the court mentioned that accounts receivable, if in a documentary form admissible under Maryland rules of evidence, may be property subject to conversion. *Id.* at 972. We see nothing in its discussion that indicates that the accounts receivable are worthless as a matter of law in the absence of records of the account. While the absence of such records might constitute some evidence that accounts receivable are worthless, the evidence here does not establish that these accounts receivable are worthless as a matter of law. As we have previously noted, while there is summary judgment evidence that most of PanAmerican Supply's records have been destroyed by fire, there is no summary judgment evidence that records of these accounts receivable were included in the records that were destroyed. We sustain Issues Number One and Two.

Appellants urge in Issue Number Three that this Court should reverse the portion of the summary judgment dismissing Al Gailani's counterclaim. This case was remanded to this Court by the Texas Supreme Court for further proceedings in order to determine whether Appellants raised fact questions on the bank's compliance with Section 9.504 of the Texas Business and Commerce Code. *Riyad Bank*, 61 S.W.3d at 353. Appellants' Issue Number Three is not included within the scope of the remand. We overrule Issue Number Three.

We reverse the summary judgment and remand to the trial court for further proceedings in accordance with this opinion.