COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




Gailani, Tawfic Al and Adel, Abdallah


 Appellants,


v.



Riyad Bank, Houston Agency, 


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-99-00139-CV



Appeal from the


61st Judicial District Court


of Harris County, Texas 


(TC#95-059490)


O P I N I O N O N R E M A N D Tawfic Al Gailani and Abdallah Adel appeal from a summary judgment on a
note in favor of Riyad Bank, Houston Agency. In three issues, Appellants argue that
the trial court erred in granting summary judgment for Riyad Bank and that the trial
court erred in striking Al Gailani's counterclaim. We reverse the summary judgment
and remand to the trial court for further proceedings.

This Court previously reversed summary judgment in favor of the Bank,
holding that there is a fact issue as to whether the Bank's placement of Adel, Al
Gailani, and Bandariyah, a subsidiary of PanAmerican Supply Company, all makers
of the note, on a "black list" maintained by the Saudi Arabian Monetary Agency, was
commercially reasonable as required by Section 9.502 of the Texas Business and
Commerce Code. Al Gailani, 22 S.W.3d at 560, 565 (Tex. App.--El Paso 2000, rev'd
at 61 S.W.3d 353 (Tex. 2001)). We did not reach the issue as to whether the Bank's
foreclosure sale of Appellants' intangible collateral, consisting of certain accounts
receivable, was commercially reasonable as required by Section 9.504 of the Code. Al
Gailani, 22 S.W.3d at 560. On appeal, the Texas Supreme Court reversed, holding
that Section 9.502 did not apply because the Bank did not attempt to collect on the
accounts. Riyad Bank v. Al Gailani, 61 S.W.3d 353, 357 (Tex. 2001). The Court
remanded this cause for our consideration of Appellants' claim that the trial court
erred in granting the Bank's summary judgment because the Bank failed to prove as a
matter of law that its foreclosure sale of the accounts receivable was commercially
reasonable, as required by Section 9.504 of the Code. Riyad Bank, 61 S.W.3d at 353. 
Tex. Bus. & Com. Code Ann. § 9.502 (Vernon Supp. 2004).

Appellants contend in Issues Number One and Two that the trial court erred in
granting summary judgment in favor of the Bank because there is a fact issue as to
whether the Bank acted in a commercially reasonable manner in conducting its
foreclosure sale and as to whether the summary judgment evidence establishes as a
matter of law that the accounts receivable the Bank sold at the sale were worthless. In
a summary judgment case, the issue on appeal is whether the movant met his or her
summary judgment burden by establishing that no genuine issue of material fact exists
and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746,
748 (Tex. 1999); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979). The burden of proof is on the movant, and all doubts about the existence
of a genuine issue of material fact are resolved against the movant. Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Friendswood Dev. Co. v. McDade &
Co., 926 S.W.2d 280, 282 (Tex. 1996); Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Therefore we must view the
evidence and its reasonable inferences in the light most favorable to the nonmovant. 
Great Am., 391 S.W.2d at 47. 

In deciding whether there is a material fact issue precluding summary
judgment, all conflicts in the evidence are disregarded and the evidence favorable to
the nonmovant is accepted as true. Rhone-Poulenc, 997 S.W.2d at 223; Harwell v.
State Farm Mutual Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995). Evidence that
favors the movant's position will not be considered unless it is uncontroverted. Great
Am., 391 S.W.2d at 47. 

The summary judgment will be affirmed only if the record establishes that the
movant has conclusively proved all essential elements of the movant's cause of action
or defense as a matter of law. Clear Creek Basin, 589 S.W.2d at 678.

It is undisputed that the Bank was required to conduct its sale of Appellants'
collateral in a commercially reasonable manner, in accordance with former Section
9.504 of the Texas Business and Commerce Code. In a non-substantive revision, this
provision now appears in Section 9.610(b) of the Code. The parties agree that the
former statute controls in this case because the foreclosure sale occurred before the
effective date of the revision. Tex. Bus. & Com. Code Ann. § 9.610(b)(Vernon 
2002).

In a suit brought by a secured creditor to recover a deficiency following the
sale of collateral, if a creditor pleads that all conditions precedent have been
performed or have occurred, it is required to prove that its disposition of the collateral
was commercially reasonable only if the debtor specifically denies it in his answer. 
Greathouse v. Charter Nat'l Bank - Southwest, 851 S.W.2d 173, 176-77 (Tex. 1992). 

The Bank did not allege that all conditions precedent had been performed or
occurred, and the Appellants did not plead in their answers that the foreclosure was
not conducted in a commercially reasonable manner. They did, however, in their
responses to the Bank's motion for a partial summary judgment, urge that it be denied
because the foreclosure sale was not conducted in a commercially reasonable manner. 
We hold that the Bank was required to prove that it conducted the sale of the accounts
receivable in a commercially reasonable manner. 

Whether collateral has been disposed of in a commercially reasonable manner
is generally a question of fact. Gordon & Assoc. v. Cullen Bank Citywest, N. A., 880
S.W.2d 93, 96 (Tex. App.--Corpus Christi 1994, no writ). The summary judgment
evidence shows that the Bank mailed notice to the maker and guarantors fourteen days
before the public sale, longer than the ten days required under the security agreement. 
It posted a copy of the notice of sale in the Harris County Courthouse and published
two notices of the sale in the Houston Chronicle about ten days before the sale. The
Bank purchased the accounts receivable, which had a face value in excess of $2
million, at the foreclosure sale for $10. Al Gailani, one of the Appellants and an
experienced Saudi businessman, testified in his affidavit that no responsible bank or
businessman would attempt to sell accounts or receivables owned by a Saudi company
with minimal notice and posting at the Harris County Courthouse. According to
Gailani, the most likely buyers for any such assets would be Saudi businesses and
investors. He indicated that one can only reach that market by identifying such
potential investors and providing them with notice and sufficient information to make
an investment decision, as well as by advertising in newspapers and magazines that
might be read by Saudi investors. We hold that the Bank has not proved as a matter of
law that the sale was conducted in a commercially reasonable manner.

 The Bank maintains that it proved as a matter of law that it conducted the sale
in a commercially reasonable manner because it conducted the sale in accordance with
the method of sale set forth in the security agreement and because the summary
judgment evidence shows that the accounts receivable are worthless.The only portion of the security agreement that refers to procedure in
connection with the foreclosure sale of collateral is that portion setting forth the
requirement of sending notice to the debtor at least 10 days before the time of the sale. 
The agreement also provides for how the notice is to be given, but is silent as to any of
the other details of conducting a foreclosure sale. We do not agree with the Bank that
the sale was commercially reasonable as a matter of law merely because it complied
with the notice provision in the security agreement, because notice to the debtor and
commercially reasonable publicity for the foreclosure sale are two separate issues. 
See Ford & Vlahos v. ITT Commercial Finance Corp., 885 P.2d 877, 883 (CA 1994).

The Bank argues that the foreclosure sale was commercially reasonable as a
matter of law because it was not required to give notice to potential Saudi Arabian
investors because the loan was made in Texas and not in Saudi Arabia. There is
summary judgment evidence indicating that no responsible bank would conduct the
sale with only the notice given by the Bank, that a responsible bank would notify
potential Saudi Arabian investors. Where, as here, the collateral is unique, the failure
to publicize the foreclosure sale to those likely to be interested in the type of collateral
involved constitutes evidence that the sale was not commercially reasonable. See
Villella Enters. v. Young, 766 P.2d 293, 297 (N.M. 1988); In re Four Star Music Co.,
2 B.R. 454, 462 (Bankruptcy Court, Middle Dist. Tenn. 1979); Associates Capital
Service Corp. v. Riccardi, 454 F. Supp. 832, 833-34 (R.I. Dist. 1978). The Bank
presents no authority in support of its argument that publicity need not be given to
those potential purchasers merely because they are outside Texas, and we are not
aware of any.

 The Bank suggests that it established as a matter of law that the accounts
receivable were worthless because of a finding by the bankruptcy trustee in the
bankruptcy of PanAmerican Supply Company, in his notice of intention to abandon
the same accounts receivable that were pledged as collateral on the note to the Bank,
that the accounts had no or inconsequential value to the estate and that the cost of their
liquidation would outweigh the benefit realized by the estate and creditors of the
estate. In making that determination, the trustee was finding that the accounts were
not of sufficient value to the estate to justify its cost of liquidation of the accounts. 
The trustee expressed no opinion as to the market value of the accounts receivable.
We do not agree with the Bank that the trustee's determination establishes as a matter
of law that the collateral has no market value. 

 Additionally, the Bank suggests that the accounts receivable were worthless as
a matter of law because Appellants admit that Bandariyah, an affiliate of
PanAmerican Supply Company, from whom most of the obligation in the accounts
receivable was due, was in financial trouble; that PanAmerican Supply Company
never collected on the account in order to pay its debt to the Bank; and that no one
from PanAmerican Supply Company or Bandariyah participated in the foreclosure
sale. Even if these facts should suggest that the accounts receivable might have no
market value, we hold that they do not establish as a matter of law that the accounts
receivable had no market value.

 The Bank refers to a general statement in Collier on Bankruptcy, Section
101.32[4], that the value of accounts receivable depends upon the solvency of the
obligors. While there is summary judgment evidence that Bandariyah was financially
troubled, there is no summary judgment evidence that it was insolvent. The Bank
suggests that the summary judgment evidence does not show that the Bandariyah
account had value, but it was the Bank, not Appellants, that had the burden of proof
with respect to the commercial reasonableness of the sale. Collier on Bankruptcy,
Section 101.32[4], Lawrence P. King Ed., 15th Ed. 1998.

 The Bank also contends that the accounts were worthless because a fire had
destroyed all the records associated with the accounts. There is summary judgment
evidence that most, if not all, records of PanAmerican Supply were destroyed by fire.
There is no summary judgment evidence that the records regarding the accounts
receivable involved here have been destroyed by fire. Further, there is summary
judgment evidence, in the affidavit of Al Gailani, that Bandariyah International, the
primary debtor of the accounts receivable, acknowledged the debt to the Bank and
made a proposal to pay the Bank the balance due by means of a down payment and
regular monthly payments. In view of that evidence, we hold that evidence that
records supporting the account may or may not have been destroyed by fire does not
establish as a matter of law that the account is worthless, because it would not be
impossible to collect the debt without records in the event that the debtor
acknowledges the debt.

In urging that it has proved the accounts worthless as a matter of law because
most or all of the records were destroyed by fire, the Bank relies on the cases of
Endicott Johnson Corp. v. Golde, 190 N.W.2d 752, 757 (N.D. 1971) and Medi-Cen
Corp. of Maryland v. Birschbach, 720 A.2d 966, 971-74 (Md. App. 1998). In
Endicott, the court held that the sponsor of a business record of a corporation doing
business in North Dakota was not required to be an employee from the corporation's
home office in another state because, due to the complexities of modern business, it
would be hindered in carrying out its business in North Dakota if it were required to
do so. Endicott, 190 N.W.2d at 756-57. The court did not hold that the absence of
records established that accounts receivable are worthless as a matter of law. In Medi-Cen Corp., the court held that it was error for the trial court to evaluate certain
accounts receivable at face value where circumstances cast doubt on their
collectibility. Medi-Cen Corp., 720 A.2d at 973. In its discussion, the court
mentioned that accounts receivable, if in a documentary form admissible under
Maryland rules of evidence, may be property subject to conversion. Id. at 972. We
see nothing in its discussion that indicates that the accounts receivable are worthless
as a matter of law in the absence of records of the account. While the absence of such
records might constitute some evidence that accounts receivable are worthless, the
evidence here does not establish that these accounts receivable are worthless as a
matter of law. As we have previously noted, while there is summary judgment
evidence that most of PanAmerican Supply's records have been destroyed by fire,
there is no summary judgment evidence that records of these accounts receivable were
included in the records that were destroyed. We sustain Issues Number One and Two.

Appellants urge in Issue Number Three that this Court should reverse the
portion of the summary judgment dismissing Al Gailani's counterclaim. This case
was remanded to this Court by the Texas Supreme Court for further proceedings in
order to determine whether Appellants raised fact questions on the bank's compliance
with Section 9.504 of the Texas Business and Commerce Code. Riyad Bank, 61
S.W.3d at 353. Appellants' Issue Number Three is not included within the scope of
the remand. We overrule Issue Number Three. 

 We reverse the summary judgment and remand to the trial court for further
proceedings in accordance with this opinion.

December 29, 2003


 PER CURIAM 

 


Before Panel No. 5

McClure, Chew, and Hill, C.J. (Ret.), JJ.

(Hill, C.J., (Ret.) sitting by assignment)